## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>**MSP RECOVERY CLAIMS, SERIES 44** )<br>**LLC,** )<br> )<br>**Plaintiff,** )<br> )<br>**v.** )<br> )<br>**THE HANOVER INSURANCE GROUP** )<br>**INC.; THE HANOVER INSURANCE** )<br>**COMPANY, INC.; THE HANOVER** )<br>**AMERICAN INSURANCE COMPANY;** )<br>**and THE HANOVER NATIONAL** )<br>**INSURANCE COMPANY,** )<br> )<br>**Defendants.** )<br>_____ ) | **Civil Action No.**<br>**22-40087-FDS** |

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUPPLEMENTAL RELIEF

**SAYLOR, C.J.**

This is a dispute concerning reimbursement of certain medical expenses pursuant to the Medicare Secondary Payer Act of 1980, 42 U.S.C. § 1395y(b) *et seq*.

Plaintiff MSP Recovery Claims Series 44, LLC ("MSP") is the assignee of Blue Cross Blue Shield of Massachusetts ("BCBSMA"), a health insurer. Defendants The Hanover Insurance Group, Inc.; The Hanover Insurance Company, Inc.; The Hanover American Insurance Company; and The Hanover National Insurance Company, Inc. (collectively, "Hanover") are property and casualty insurers that sell, among other products, automobile insurance. According to the complaint, Hanover sells policies that provide coverage to its insureds for accident-related medical care, either to the insured directly or to third parties injured by the insured.

The complaint alleges that Hanover has failed to reimburse BCBSMA for conditional

payments made to cover medical costs, as required by 42 U.S.C. § 1395y.  It asserts two claims against defendants, under 42 U.S.C. § 1395y(b)(3)(A) (Count 1) and 28 U.S.C. § 2201 (Count 2), seeking double damages for the allegedly deficient reimbursements and a declaratory judgment that defendants are obligated to reimburse BCBSMA and share payment information.

Plaintiff has also moved for supplemental relief, requesting that the court order defendants to correct certain alleged "misnomers" used in federal insurance reporting.

Defendants have moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.  Defendants have also opposed plaintiff's motion for supplemental relief.

For the following reasons, the motion to dismiss will be granted in part and denied in part.  Plaintiff's motion for supplemental relief will be denied.

## I.   <u>Background</u>

The following facts, unless noted otherwise, are set forth as alleged in the complaint.

### A.   <u>The Parties</u>

MSP is a Delaware limited liability company.  (Compl. ¶ 8).  It is the assignee of Blue Cross Blue Shield of Massachusetts ("BCBSMA") as to the claims asserted in this lawsuit.  (*Id.* ¶ 24).

BCBSMA is a Massachusetts health insurer and a Medicare Advantage Organization ("MAO").  (*Id.*).  Medicare Advantage is a Congressionally created program for providing Medicare benefits through private health insurers.  (*Id.* ¶ 3).  In substance, Medicare pays MAOs, like BCBSMA, a fixed amount, and the sponsor pays the health-care expenses of its enrollees.

The Hanover Insurance Group, Inc., is "an insurance-related entity that serves as the

parent company to many insurers." (*Id.* ¶ 11).[1]

The Hanover Insurance Company is "a subsidiary of [The Hanover Insurance Group], and is an insurer that issues liability and no-fault policies." (*Id.* ¶ 12).

The Hanover American Insurance Company is "a subsidiary of [The Hanover Insurance Group], and is an insurer that issues liability and no-fault policies." (*Id.* ¶ 13).

The Hanover National Insurance Company is "a subsidiary of [The Hanover Insurance Group], and is an insurer that issues liability and no-fault policies." (*Id.* ¶ 14).

### B.    <u>The Statutory Framework</u>

Congress enacted the Medicare Secondary Payer Act in 1980. *See* 42 U.S.C. § 1395y(b) *et seq.* Under the Act, if both Medicare and a private insurer cover the same eligible expense, the private insurer would be the primary source of payment and Medicare the secondary option. "Medicare benefits became an entitlement of last resort, available only if no private insurer was liable." *MSP Recovery Claims, Series 44, LLC v. Quincy Mut. Fire Ins. Co.*, 2023 WL 4107038, at *2 (D. Mass. June 21, 2023) (quoting *Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1234 (11th Cir. 2016)).

Medicare will not pay for medical services if "payment has been made or can reasonably be expected to be made under . . . an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance," or other form of "primary plan." 42 U.S.C. § 1395y(b)(2)(A). However, Medicare may make conditional payments—that is, it may "make payment . . . with respect to an item or service if a primary plan . . . has not made or cannot reasonably be expected to make payment with respect to such item or service promptly." *Id.* §

---

[1] The complaint asserts claims against each of the defendants in the alternative. Accordingly, the Court will use "Hanover" to refer to The Hanover Insurance Group and each of its subsidiaries collectively, unless the context indicates otherwise.

1395y(b)(2)(B)(i).

Such conditional payments must be reimbursed by a primary plan "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." *Id.* § 1395y(b)(2)(B)(ii).  The Act specifies that a primary plan's responsibility for a payment may be demonstrated by "a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." *Id.*

To recover reimbursements, the United States may bring an action and "collect double damages against" a primary plan that improperly fails to reimburse Medicare.  *Id.* § 1395y(b)(2)(B)(iii).  The statute also establishes "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)." *Id.* § 1395y(b)(3)(A).

C.      **Factual Background**

According to the complaint, "Hanover is a property and casualty insurer that is in the business of collecting premiums in exchange for taking on the risk that its insureds will be injured and that Hanover will be contractually obligated to pay for its insured's accident-related medical care." (Compl. ¶ 5).  Hanover "also collects premiums in exchange for taking on the risk that its insureds will injure someone else and Hanover will be required to indemnify its insureds, typically through a settlement agreement that releases the third-party claimant's claim for accident-related medical care." (*Id.*).  The complaint alleges that Hanover is a "primary plan" under 42 U.S.C. § 1395y(b)(2)(A).  (Compl. ¶ 6).

The complaint alleges that as a primary plan, Hanover has two duties under the Medicare Secondary Payer Act:  "(1) to notify the secondary payer . . . of Hanover's primary payer status,

4

and (2) to repay the secondary payer, within 60 days." (*Id.*).  It alleges generally that "auto insurers have disregarded for more than a decade their repayment obligations to MAOs," and specifically that Hanover has failed to comply with those statutory duties when entering into settlements.  (*Id.* ¶¶ 4, 21).  Because, according to MSP, "[t]he only way to fully identify all secondary payments that auto insurers failed to reimburse is by comparing an MAO's and an auto insurer's claims data," it sets forth two examples of representative beneficiaries whose reimbursement histories allegedly illustrate Hanover's violations.  (*Id.* ¶¶ 19-21).

First, MSP describes allegations concerning A.D., an enrollee in a Medicare Advantage plan sponsored by BCBSMA.  (*Id.* ¶ 24).  On February 8, 2017, A.D. was injured in an accident.  (*Id.* ¶ 25).  The complaint alleges that A.D.'s accident-related costs were covered under a no-fault policy issued by Hanover.  (*Id.* ¶ 26).  It further alleges that A.D.'s medical providers charged BCBSMA $50,367.56, of which it paid $31,670.06.  (*Id.* ¶ 27).

According to the complaint, Hanover reported information to the Centers for Medicare & Medicaid Services ("CMS") about A.D.'s accident.  (*Id.* ¶ 29).  The complaint alleges that MSP became aware of that reporting in 2021 and then demanded repayment from "Hanover."  (*Id.* ¶ 32).[2]  In correspondence in April and May 2021, "Hanover" asserted that MSP had sent its demand letter to the wrong entity; that it had records of A.D.'s claim, including the "ultimate settlement of her claim with the primary payer entity"; and that A.D. "was not the insured."  (*Id.* ¶¶ 32-34).

Second, the complaint describes allegations concerning P.R., who is also an enrollee in a Medicare Advantage plan sponsored by BCBSMA.  (*Id.* ¶ 45).  According to the complaint, P.R. was injured "in an incident" on June 15, 2017.  (*Id.* ¶ 46).  "Hanover's insured" was responsible

---

[2] The complaint does not clarify the Hanover entity with which MSP corresponded.

for the accident.  (*Id.* ¶ 47).  The complaint alleges that P.R.'s medical providers charged BCBSMA $39,751.87, of which BCBSMA paid $9,272.17.  (*Id.* ¶ 48).  The complaint further alleges that Hanover "indemnified its insured tortfeasor and made payments pursuant to a settlement with P.R."  (*Id.* ¶ 49).

According to the complaint, Hanover reported information to CMS about P.R.'s accident and "admitted its primary payer status."  (*Id.* ¶ 50).  However, Hanover "failed to remit or reimburse" BCBSMA for P.R.'s accident-related injuries.  (*Id.* ¶ 52).  In correspondence with MSP in 2021, "Hanover took pains to avoid disclosing the identity of the correct Hanover entity" involved in P.R.'s case, but "admit[ted] that the insurance entity involved had settled the P.R. cla[i]m in 2019."  (*Id.* ¶ 56).  Hanover allegedly stated that "the insurance company involved had attempted to shift its primary payer responsibilities to P.R. through contractual indemnity language" in the settlement.  (*Id.*).

On December 18, 2018, BCBSMA assigned all of its rights to recover payments made on behalf of its enrollees to MSP Recovery, LLC.  (*Id.* app. 2 ¶ 1).  On April 10, 2019, MSP Recovery, LLC assigned the acquired rights to a designated series of MSP Recovery Claims, Series LLC, Series 15-11-388.  (*Id.* app. 2 ¶ 2).  On October 22, 2020, Series 15-11-388 assigned the same acquired rights to a designated series of MSPRC 44, MSPRC 44-20-388.  (*Id.* app. 2 ¶ 3).

### D.    Procedural Background

MSP filed the complaint on July 28, 2022.  It asserts two counts against all defendants:  a private cause of action under 42 U.S.C. § 1395y(b)(3)(A) (Count 1) and a request for declaratory judgment pursuant to 28 U.S.C. § 2201 (Count 2).

Hanover has moved to dismiss the complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

*See* Fed. R. Civ. P. 12(b)(1), (b)(6).  MSP has moved for an order requiring defendants to "correct misnomers used in reports to the U.S. government so that MSP may substitute the correct names" in its complaint.  (ECF No. 21 at 1).

## II.    Motion to Dismiss

### A.    Legal Standards

On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)).  If the party seeking to invoke federal jurisdiction "fails to demonstrate a basis for jurisdiction," the motion to dismiss must be granted.  *Id.*  When ruling on a motion to dismiss under Rule 12(b)(1), the court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor."  *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

To survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint must state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences.  *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  Dismissal is appropriate if the complaint fails to set forth "factual

allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

**B.     Analysis**

Defendants have moved to dismiss the complaint on the grounds that plaintiff lacks standing to sue; that the complaint has not named a proper defendant; that the suit is time-barred; and that the Medicare Secondary Payer Act permits only damages as a remedy.

**1.     Article III Standing**

Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases or controversies.  U.S. Const. art. III, § 2; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).  Article III standing is a prerequisite for subject-matter jurisdiction, and "the plaintiff bears the burden of pleading facts necessary to demonstrate standing." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).  The standing doctrine serves to identify those disputes that are "appropriately resolved through the judicial process." *Lujan*, 504 U.S. at 560 (quotations and internal citations omitted).

Constitutional standing requires proof of three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61 (quotations and internal citations omitted).

8

"To be concrete, an injury must 'actually exist'; it cannot be 'abstract.'  For an injury to be 'particularized,' it must go beyond a 'generalized grievance,' to manifestly 'affect the plaintiff in a personal and individual way.'"  *Lyman v. Baker*, 954 F.3d 351, 360-61 (1st Cir. 2020) (alterations omitted) (first citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016); then citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344, 348 (2006); and then citing *Lujan*, 504 U.S. at 560 n.1).  "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," *Lujan*, 504 U.S. at 561, which here is "the plausibility standard applicable under Rule 12(b)(6)."  *Hochendoner*, 823 F.3d at 730.

Here, the alleged injury-in-fact is defendant's failure to reimburse BCBSMA for conditional payments of accident-related medical expenses.  (Compl. ¶¶ 40, 59).  In a similar context, the court in *MSP Recovery Claims, Series 44, LLC v. Quincy Mutual Fire Insurance Company*, summarized the requirements to show injury-in-fact as follows:

> [Plaintiff] "must make adequate factual allegations to support a finding that (1) [the insurer] incurred medical expenses as a result of an accident suffered by the respective exemplar patient; (2) [the insurer] paid, but did not receive reimbursement, for those expenses; (3) [the insurer] assigned its claim for reimbursement to a Series LLC of [plaintiff]; and (4) [plaintiff] has the right to sue on behalf of the designated Series LLC that received the assignment."

2023 WL 4107038, at *5 (quoting *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091, at *4 (S.D.N.Y. Mar. 26, 2021), *reconsideration denied*, 2021 WL 3371621 (S.D.N.Y. Aug. 2, 2021) and citing *MSP Recovery Claims, Series LLC v. Merchants Mut. Ins. Co.*, 2022 WL 2439410, at *4 (W.D.N.Y. Mar. 28, 2022); *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 2022 WL 118387, at *6 (S.D.N.Y. Jan. 11, 2022), *aff'd MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77 (2d Cir. 2023)).[3]

---

[3] Although plaintiff has noted that these specific standing arguments are not made in Hanover's Motion to Dismiss, "federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is

### a. __Medical Expenses Incurred__

As to the first factor, the complaint alleges that A.D. and P.R. were injured in two unspecified accidents.  It alleges neither the type of accident nor any details about them.  (*See* Compl. ¶¶ 25, 46).  Instead, MSP attaches spreadsheets to its complaint, which purportedly list diagnostic codes and injuries related to the accident treatment, dates of services, and dates of billing and payment.  (Compl. ¶¶ 27, 48).  The complaint does not make any allegations that link the diagnostic or procedure codes to actual diagnoses or treatments received by the injured or to the accidents allegedly covered by defendants.  *See Merchants Mut. Ins. Co.*, 2022 WL 2439410, at *6.  Furthermore, the spreadsheets do not contain the name of the injured or of BCBSMA.  *See Quincy Mut.*, 2023 WL 4107038, at *5; *AIG*, 2021 WL 1164091, at *5.

Nonetheless, other courts considering the same issues have found similar spreadsheets sufficient to satisfy plaintiff's burden to establish that the relevant MAO incurred medical expenses as a result of the accident suffered by the initialed patients.  *See Quincy Mut.*, 2023 WL 4107038, at *6; *AIG*, 2021 WL 1164091, at *6; *Hereford*, 2022 WL 118387, at *6-7.  Here, as in those cases, there are policy numbers and dates on which medical services were rendered that could link the data to the injured.  (Compl. Exs. A-C).  Drawing all reasonable inferences in plaintiff's favor, the Court similarly concludes that the complaint plausibly alleges that BCBSMA incurred medical expenses for the medical care of A.D. and P.R.

### b. __Reimbursement__

As to the second factor, the complaint must further allege that BCBSMA paid reimbursable costs but did not receive reimbursement from Hanover.  *See Quincy Mut.*, 2023 WL 4107038, at *5; *AIG*, 2021 WL 1164091, at *4; *MAO-MSO Recovery II, LLC v. State Farm*

---

perhaps the most important of [the jurisdictional] doctrines.'"  *FW/PBS, Inc.*, 493 U.S. at 231 (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

*Mut. Auto. Ins. Co.*, 994 F.3d 869, 874-75 (7th Cir. 2021) ("Because the cause of action here is a statutory claim for the collection of unreimbursed payments, [plaintiff's] injury has to be the existence of an unreimbursed payment—a concrete right to collect from State Farm—not the mere existence of an assignment to collect *potentially* unreimbursed payments.").

The complaint plausibly alleges that Hanover failed to reimburse BCBSMA when it incurred accident-related medical expenses. (Compl. ¶ 76). For present purposes, the crucial question is whether those costs were reimbursable.

MSP relies in very large part on Hanover's reporting to CMS regarding the accidents, contending that the reporting necessarily entails an admission of its primary-payer status. (*Id.* ¶¶ 36, 50-52). Under the Act, reimbursement is required "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii). A primary plan's responsibility for payment may be shown by a judgment, settlement, or "by other means." *Id.*

However, the reporting requirements for insurers are broader than the reimbursement requirements. An insurer must "determine whether a claimant (including an individual whose claim is unresolved) is entitled to benefits under [Medicare] on any basis" and "if the claimant is determined to be so entitled, submit the information" to CMS. *Id.* § 1395y(b)(8)(A)(i)-(ii); *see Quincy Mut.*, 2023 WL 4107038, at *6. That information then allows "the Secretary to make an appropriate determination concerning coordination of benefits, including any applicable recovery claim." 42 U.S.C. § 1395y(b)(8)(B)(ii).

As interpreted by the Second Circuit, that language indicates that CMS reports created from the required information might show "benefits to be paid by a primary plan, by Medicare itself, by an MAO, or by another source: all such payments may be obligations owed 'under' the

MSP Act," and that a "recovery claim" is a subset of all the claims a primary plan must report. *Hereford*, 66 F.4th at 87-88.  Such a report is neither an admission of liability nor of a reimbursable cost.  *Id.* at 88 ("[A] primary plan like Hereford is responsible for reporting any claim received by it that to its knowledge involves a Medicare beneficiary—not just the claims it should have paid as a primary payer or for which it may have to reimburse another payer.").

This Court finds the Second Circuit's interpretation persuasive, as have multiple other sessions of this Court.  *See Quincy Mut.*, 2023 WL 4107038, at *7, *14 (analyzing *Hereford* and dismissing for lack of standing); *MSP Recovery Claims, Series LLC v. Safeco Ins. Co. of Am.*, 2023 WL 3481586, at *1-2 (D. Mass. May 16, 2023) (same); *MSP Recovery Claims Series 44, LLC v. Arbella Mut. Ins. Co.*, 2023 WL 3481496, at *1-2 (D. Mass. May 16, 2023) (same).

Here, the complaint alleges some additional facts beyond the CMS report allegations. First, as to A.D., it alleges:

> [I]n 2021, [MSP] promptly sent correspondence to Hanover, demanding repayment.  In its April 20, 2021 response, Hanover suggested that MSPRC 44 had sent the letter to the wrong "Hanover" entity, but refused to specify the correct entity.  At the same time, Hanover freely admitted to having records of A.D.'s 2017 claim, including the ultimate settlement of her claim with the primary payer entity.
>
> In further correspondence dated May 18, 2021, Hanover's counsel admitted: "Hanover has record of a claim involving [A.D.] from 2017."  Hanover then admitted that the Hanover entity involved had "fully resolved the claim . . . through a settlement agreement and obtained a full release for its insured."  By admitting these facts, Hanover admitted it was a primary payer under the MSP Act.

(Compl. ¶¶ 32-33).

In its opposition to the motion to dismiss, MSP attached the actual May 18, 2021 correspondence with Hanover that was purportedly quoted in the complaint.[4]  In fact, it reads as

---

[4] "When considering motions to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may consider materials outside the pleadings."  *Groden v. N&D Transportation Co., Inc.*, 866 F.3d 22, 24 n.3 (1st Cir. 2017) (considering assertions in the complaint and in the opposition to the motion to dismiss); *see also Gonzalez v. United States*, 284 F.3d 281 (1st Cir. 2002), as corrected (May 8, 2002)

follows:  "Hanover has [a] record of a claim involving [A.R.].  However, Hanover is not the insurer for that claim.  . . .  [T]he other insurer appears to have fully resolved the claim within weeks of the accident through a settlement agreement and obtained a full release for its insured . . . ."  (ECF No. 18-3).  The May 18 correspondence also states:  "[Your] [n]otice does not provide a valid claim number.  Hanover has no record of a claim with that number, or even in that format."  (*Id.*).

As to P.R., the complaint alleges that Hanover "was aware that P.R. had an accident" and "admit[ted] that the [Hanover-owned] insurance entity involved had settled the P.R. claim." (Compl. ¶ 56).  Hanover responded that "the tortfeasor's insurer (which is not one of the Hanover Defendants) paid its entire policy limit of $100,000 to resolve P.R.'s claim."  (Defs.' Mem. at 12).[5]

Those additional facts are potentially important, because the complaint alleges that "[w]hen Hanover executes a settlement agreement with a person who is a Medicare beneficiary, Hanover becomes a primary payer that is responsible for the reimbursement of the medical services rendered to that person by an MAO."  (Compl. ¶ 42).  That contention may be derived from a portion of the statutory text that directs, "[a] primary plan's responsibility for such payment may be demonstrated by . . . a payment conditioned upon the recipient's compromise, waiver, or release . . . for items or services included in a claim against the primary plan or the primary plan's insured."  42 U.S.C. § 1395y(b)(2)(B)(ii).  That is so "whether or not there is a determination or admission of liability" for the settlement payment.  *Id.*

---

(rejecting the argument that the district court's consideration of exhibits attached to both parties' motions and supplemental briefs to determine subject matter jurisdiction was improper).  The requirements of Rule 12(d) apply to a motion under Rules 12(b)(6) and 12(c), but not to one under Rule 12(b)(1).  Fed. R. Civ. P. 12(d).

[5] It is unclear whether defendants make these assertions in the context of attacking the merits of plaintiff's claims or whether they mean them also to apply to standing.  (*See* Defs.' Mem. at 8-12).  Here, the Court considers them in the context of standing.

There are serious questions as to the validity of those allegations, particularly in light of the fact that MSP appears to have unfairly mischaracterized the content of the May 18, 2021 correspondence.  Nonetheless, the Court cannot, on this record, dismiss the complaint for lack of subject-matter jurisdiction.  Where, as here, "the relevant facts are dispositive of both the 12(b)(1) motion and portions of the merits, the trial court should grant the motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'"  *Torres-Negron v. J & N Recs., LLC*, 504 F.3d 151, 163 (1st Cir. 2007) (quoting *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987)).  The parties dispute whether Hanover is the settling insurer, and therefore the primary payer, a claim relevant to both standing and the merits.  The complaint also alleges that there is further relevant evidence, such as the April 20, 2021 correspondence, that is not before the Court.

By alleging that defendant provided settlement payments to A.D. and P.R., the complaint sufficiently alleges that certain medical expenses, items, or services related to the claims are reimbursable.  That is sufficient—at least on a motion to dismiss for lack of jurisdiction —to satisfy the second factor, that BCBSMA paid reimbursable costs but did not receive reimbursement.

### c.    <u>Assignment of Valid Claim</u>

The complaint must also allege that BCBSMA assigned the claims to plaintiff.  An "assignee of a claim has standing to assert [an] injury in fact suffered by the assignor." *Quincy Mut.*, 2023 WL 4107038, at *10 (quoting *MSP Recovery Claims, Series LLC v. QBE Holdings Inc.*, 965 F.3d 1210, 1217 (11th Cir. 2020)).  Defendant contends that the complaint fails to make adequate allegations of an assignment of BCBSMA's recovery rights and that the court should require production of the alleged assignments before allowing the case to proceed.

14

Here, the complaint specifically alleges that BCBSMA's rights were assigned to plaintiff. It includes excerpts of the assignment documents, specifies the claims identified in the complaint were included in the rights transferred, alleges that MSP subsequently assigned the rights it acquired to Series 15-11-388, and asserts that Series 15-11-388 assigned the claims to MSPRC 44-20-388.  (Compl. app. 2).  For present purposes, that is sufficient.  *See Quincy Mut.*, 2023 WL 4107038, at *11.

The complaint specifically alleges that BCBSMA made payments to the medical providers for A.D. and P.R. under 42 U.S.C. § 1395y(b)(2)(A), and therefore that it was entitled to assert the private right of action established by 42 U.S.C. § 1395y(b)(3)(A).  (*See* Compl. ¶¶ 24-27, 45-48).  Defendants further contend, however, that the Medicare Secondary Payer Act does not provide a private right of action by an MAO, meaning that BCBSMA did not have a recovery right to assign.

The Court agrees with the Eleventh Circuit's opinion in *Humana Medical Plan, Inc. v. Western Heritage Insurance Company*, 832 F.3d 1229 (11th Cir. 2016), that the plain text of § 1395y(b)(3)(A) "permits an MAO to sue a primary plan that fails to reimburse an MAO's secondary payment."  *Id.* at 1238.  That section establishes "a private cause of action for damages . . . in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)."  42 U.S.C. § 1395y(b)(3)(A).  The statute's text does not exclude MAOs from exercising that right of action.  That view appears to be the consensus among the federal courts.  *See In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012) ("MAOs are not excluded from bringing suit under the MSP private cause of action."); *MSP Recovery Claims, Series LLC & Series 17-04-631 v. Plymouth Rock Assurance Corp.*, 404 F. Supp. 3d 470, 481 (D. Mass. 2019) ("[A]n MAO may maintain an action under §

15

1395y(b)(3)(A).”); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 2392827, at *3 (C.D. Ill. May 25, 2018) (collecting cases).

### d.  <u>Right to Sue on Behalf of a Designated Series</u>

Finally, the complaint must make adequate factual allegations to support a finding that plaintiff has the right to sue on behalf of the designated Series LLC that received the assignment of the claims.  (Compl. app. 2).  MSP alleges that it has enumerated rights relating to its designated series pursuant to its limited liability agreement, including that “all rights and benefits arising from assignments to its series shall belong to MSPRC 44” and that it is authorized to pursue suits arising from assignments to its series in its own name.  (Compl. ¶ 9).

Under Delaware law, “[u]nless otherwise provided in a limited liability company agreement, a protected series shall have the power and capacity to . . . sue and be sued.”  Del. Code Ann. tit. 6, § 18-215(b)(1).  Similar allegations regarding the relevant limited liability agreements reserving rights to sue have been found sufficient to demonstrate standing by multiple courts.  *See, e.g.*, *MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, 2018 WL 5086623, at *13-14 (C.D. Cal. Aug. 13, 2018) (declining to dismiss for lack of standing on behalf of the series where the operating agreement provided the right to sue); *MSP Recovery Claims, Series LLC v. Merchants Mut. Ins. Co.*, 2020 WL 8675835, at *8 (W.D.N.Y. Nov. 20, 2020), *report and recommendation adopted sub nom. MSP Recovery Claims, Series LLC v. Merchants Mut. Ins. Corp.*, 2021 WL 784537 (W.D.N.Y. Mar. 1, 2021) (finding plaintiff to have standing where the operating agreement reserved the right to sue).  On these facts, drawing reasonable inferences in favor of MSP, the Court declines to dismiss for lack of standing.

With these four elements met, the Court finds that the complaint sufficiently alleges an injury-in-fact.

e.   **Causation**

For a party to have standing, there must also be "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)).  To meet that element, the complaint must allege that defendants "issued the relevant insurance policy and [] the alleged injuries would have been covered under such policy and/or settlement agreements entered into by [d]efendants." *Quincy Mut.*, 2023 WL 4107038, at *12; *see also AIG*, 2021 WL 1164091, at *11–14; *Hereford*, 2022 WL 118387, at *9–11.  Given those requirements, often "injury-in-fact and causation rise and fall together" in Medicare Secondary Payer Act cases.  *See Hereford*, 66 F.4th at 85.

Defendants contend that MSP cannot "allege any injury traceable to [The Hanover Insurance Group's] conduct because [it] cannot be, and is not, a primary payer." (Defs.' Mem. at 8, 12).  That is because The Hanover Insurance Group is a holding company "not licensed to offer insurance and does not issue insurance." (*Id.* at 8).  In support, it attaches an excerpt of a Form 10-K for The Hanover Insurance Group. (*Id.* Ex. A).

In response, MSP relies on Hanover's Section 111 reporting, discussed above, and contends that the Court may not consider the Form 10-K. (Pl.'s Opp. at 11 (citing a case ruling on a motion to dismiss under Rule 12(b)(6))).  Because, however, this motion is brought under Rule 12(b)(1), the Court is not barred from considering matters outside the pleadings.  *See Groden v. N&D Transportation Co., Inc.*, 866 F.3d 22, 24 n.3 (1st Cir. 2017) ("When considering motions to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may consider materials outside the pleadings.").

It is true that a court "must credit the plaintiff's well-[pleaded] factual allegations and

17

draw all reasonable inferences in the plaintiff's favor" when reviewing a Rule 12(b)(1) motion. *Merlonghi*, 620 F.3d at 54.  Nonetheless, MSP has not made sufficient allegations to suggest why The Hanover Insurance Group itself—which is a holding company—may be liable as a primary payer.  The complaint alleges that "Hanover improperly reported its primary payer status to CMS for A.D.'s accident-related injuries, by reporting 'The Hanover Insurance Group, Inc.' as the plan name," but asserts no cause of action regarding that alleged wrongdoing.  (Compl. ¶ 30). Indeed, the complaint seems to acknowledge that The Hanover Insurance Group is not liable, instead asserting that "[b]ecause this entity is the corporate parent for numerous insurers bearing some variation of the 'Hanover' name, MSPRC 44 has named various potential Defendants in this Complaint."  (Compl. ¶ 30).

It is undisputed, as a factual matter, that The Hanover Insurance Group is a holding company.  And CMS allows a holding company to provide its name under § 111 on behalf of any combination of subsidiaries that are primary plans.  *See* MMSEA Section 111 Medicare Secondary Payer Mandatory Reporting, Liability Insurance (Including Self-Insurance), No-Fault Insurance, and Workers' Compensation USER GUIDE, Ctrs. for Medicare & Medicaid Servs., 6-1 (2022).  Under the circumstances, no reasonable inference may be drawn to suggest that the holding company here is the primary payer.

In sum, those allegations are not sufficient to "fairly . . . trace[] [the injury] to the challenged action of the defendant," The Hanover Insurance Group, and not to "the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 560 (quoting *Simon*, 426 U.S. at 41–42).  Other courts to consider insurance holding companies in this context have granted motions to dismiss as to the holding company defendant.  *See, e.g.*, *MSP Recovery Claims, Series LLC. v. Progressive Corp.*, 2019 WL 5448356, at *12-13 (N.D. Ohio Sept. 17,

2019); *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091, at *11-12 (S.D.N.Y. Mar. 26, 2021), *reconsideration denied*, 2021 WL 3371621 (S.D.N.Y. Aug. 2, 2021). The Court similarly finds that MSP lacks standing to assert a claim as to defendant The Hanover Insurance Group, and will dismiss Count 1 as to it.

Defendants further contend that the insurers involved in the claims of A.D. and P.R. are "not one of the Hanover Defendants." (Defs.' Mem. at 8, 12). As discussed, defendants instead contend that A.D. "withdrew her claim against the tortfeasor and the insurer that MSP Recovery guesses is a primary payer. Moreover, that insurer (which is not one of the Hanover Defendants) did not make a settlement payment before or after A.D. dropped the claim." (*Id.* at 11-12). As to P.R., it contends that "the tortfeasor's insurer (which is not one of the Hanover Defendants) paid its entire policy limit of $100,000 to resolve P.R.'s claim." (*Id.* at 12). Defendants also submitted a settlement notice on "The Hanover Insurance Group" letterhead concerning P.R. and P.R.'s alleged claim number. (*Id.* Ex. B).[6]

MSP points to Hanover's settlement notice as evidence that it had a responsibility to pay for P.R.'s treatment. It further contends that there is further relevant evidence as to A.D., such as the April 20, 2021 correspondence, that is not before the Court. (Pl.'s Opp. at 7, 10).

Because "the relevant facts are dispositive of both the 12(b)(1) motion and portions of the merits," a court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Torres-Negron*, 504 F.3d

---

[6] As noted, the Court may consider this exhibit on a motion to dismiss for lack of subject-matter jurisdiction. *Groden*, 866 F.3d at 24 n.3. To the extent the Court is called on to consider the same argument for a 12(b)(6) motion, the exhibit may also be considered. Defendants contend that the Court can consider the contents of the settlement agreement in a motion to dismiss. Because the letter is central to plaintiff's claim, sufficiently referred to in the complaint, and its authenticity is apparently not in dispute, it will consider the letter. *See Flores v. OneWest Bank, F.S.B.*, 886 F.3d 160, 167 (1st Cir. 2018); *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993). (*See* Pl.'s Opp. at 9 (relying on the exhibit)).

at 163 (1st Cir. 2007) (internal quotations omitted)).  Because there is a dispute regarding whether one of the three remaining Hanover defendants issued the relevant insurance policy and entered into settlement agreements for the claims, the Court will deny the motion to dismiss for lack of subject-matter jurisdiction as to those subsidiaries.[7]

In summary, the complaint alleges sufficient facts for a finding of causation as to defendants The Hanover Insurance Company, The Hanover American Insurance Company, and The Hanover National Insurance Company, at this stage.[8]

### f.    <u>Redressability</u>

Finally, for plaintiff to have standing, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43).  Because the complaint alleges a failure to reimburse certain payments, initially paid by BCBSMA and ultimately assigned to MSP, an award of damages under the private cause of action ("which shall be in an amount double the amount otherwise provided") would redress the injury.  42 U.S.C. § 1395y(b)(3)(A).  The complaint alleges a plausible claim that BCBSMA incurred reimbursable costs for A.D. and P.R., and therefore suffered an injury, which claim was ultimately assigned to an MSP Series, on behalf of whom MSP has the right to sue.  *See Quincy Mut.*, 2023 WL 4107038, at *5.

---

[7] Rule 8 allows a complaint to name multiple alternative defendants.  Fed. R. Civ. P. 8(d)(2); *see, e.g., J & J Sports Productions, Inc. v. Carvajal*, 2011 WL 4499156, at *2 (D. Mass. Sept. 26, 2011).  The complaint so names each of the defendants and alleges "[f]or each of these alternatively-named Defendants, . . . the Defendant was the primary payer responsible for coverage of the medical treatments received by BCBSMA's beneficiaries, such as A.D. and P.R." (Compl. ¶¶ 67-68).  Those allegations against the three subsidiary defendants are sufficient.

[8] As mentioned, it is unclear whether defendants make these assertions in the context of attacking the merits of plaintiff's claims or standing.  (*See* Defs.' Mem. at 8-12).  To the extent that defendants set forth this argument on a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences.  *See Ruiz*, 496 F.3d at 5.  On that standard, the complaint sufficiently alleges that one of the alternatively-named defendants is the primary payer responsible for coverage of the medical costs of A.D. and P.R. (Compl. ¶¶ 67-68).  At this early stage, the Court will not dismiss the complaint because of Hanover's contention that the insurers involved in the claims of A.D. and P.R. are "not one of the Hanover Defendants."  (Defs.' Mem. at 12).

\*          \*          \*

In summary, the Court finds MSP has standing to assert its claims against the Hanover subsidiaries. The motion to dismiss for lack of standing will therefore be granted in part, as to defendant The Hanover Insurance Group, and denied in part, as to defendants The Hanover Insurance Company, The Hanover American Insurance Company, and The Hanover National Insurance Company.

### 2.    Count 1:  42 U.S.C. § 1395y(b)(3)(A)

In addition to their standing defenses, defendants contend that the claims are time-barred.

### a.    Statute of Limitations

The statute at issue, 42 U.S.C. § 1395y(b), does not include a statute of limitations that applies to private rights of action; it does contain a statute of limitations, but it applies only to claims brought by the government. *See* 42 U.S.C. § 1395y(b)(2)(B)(iii) ("An action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award, or other payment . . . relating to such payment owed."). The initial question, therefore, is what limitations period should apply.

### (1)    Limitations Period

Historically, in the absence of a federal statute of limitations that specifically applied to a particular claim, federal courts borrowed analogous state limitations periods unless it was "inconsistent with federal law or policy to do so." *Jones v. R.R. Donnelley & Sons*, 541 U.S. 369, 377-78 (2004) (quoting *Wilson v. Garcia*, 471 U.S. 261, 266–267 (1985)). In 1990, Congress enacted a "catchall 4-year statute of limitations for actions arising under federal

statutes enacted after December 1, 1990." *Id.* at 371; *see* 28 U.S.C. § 1658.[9]

The *Jones* court noted that the practice of borrowing state limitations periods had created substantial problems, as well as calls from courts and commentators to enact a federal statute of limitations.  *Jones*, 541 U.S. at 379-80.  Congress did so, but the statute, 28 U.S.C. § 1658, was not made retroactive; instead, it applies only to "a civil action arising under an Act of Congress enacted after [December 1, 1990]." *Jones*, 541 U.S. at 380.

That, in turn, has led to uncertainty and litigation as to which claims are covered by the statute.  In *Jones*, the Supreme Court found that "[t]he history that led to the enactment of § 1658 strongly supports an interpretation that fills more rather than less of the void that has created so much unnecessary work for federal judges." *Id.* at 380.  Ultimately, it "concluded that a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Id.* (quoting § 1658).

The Supreme Court in *Jones* cautioned that "the question whether a plaintiff's cause of action would have been viable prior to a post-[1990] amendment will be particularly complicated in cases in which there was a split of authority regarding the scope of the original statute," and advised that "[i]n such cases, courts will have to determine whether the amendment clarified existing law or created new rights and liabilities." *Id.* at 384 n.18.  The First Circuit has since concluded that in order to determine whether an amendment "made [a claim] possible," courts should determine whether it had a "substantive effect" on the original statute and if plaintiff's

---

[9] Section 1658(a) provides as follows:

Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658(a).

claims "necessarily depend" on that amendment.  *Mercado v. Puerto Rico*, 814 F.3d 581, 587 (1st Cir. 2016).

Accordingly, the court must begin by analyzing whether plaintiff's claim was "made possible" by a statute enacted after December 1, 1990.  If it was, the four-year limitations period in § 1658 applies.  If it was not, the court should borrow an appropriate limitations period from an analogous statute.  *See, e.g.*, *Mercado*, 814 F.3d at 584 n.3 (describing the practice "still used when § 1658 does not apply, . . . [to] require[] the courts to identify 'the most analogous statute of limitations in the state where the action was brought.'" (quoting *Greenwood ex rel. Estate of Greenwood v. N.H. Pub. Utils. Comm'n*, 527 F.3d 8, 13 (1st Cir.2008))); *Price v. Bernanke*, 470 F.3d 384 (D.C. Cir. 2006) (rejecting the application of § 1658 to an ADEA claim and borrowing an analogous limitations period); *Yoshikawa v. Seguirant*, 74 F.4th 1042 (9th Cir. 2023) (describing the acceptance of § 1658 for certain § 1981 claims and the rejection and limitations borrowing for others).[10]

Congress enacted the private cause of action asserted in this case in the Medicare Secondary Payer Act in 1986.  However, the statute did not create MAOs, and grant them a right to seek reimbursement, until Congress enacted Medicare Part C in 1997.  Some courts have concluded that the 1997 statute is therefore a substantive amendment that "made possible" claims such as this.  *See MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*, 43 F.4th 1259, 1264

---

[10] As noted, if § 1658 does not apply, the court is "generally [required to] 'borrow' the most closely analogous state limitations period" or "[i]n the rare case, . . . borrow[] analogous federal limitations periods in the absence of an expressly applicable one."  *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 415 (2005); *see Jones*, 541 U.S. at 371.  Some courts that have rejected the application of § 1658 in cases similar to this one have borrowed a federal, rather than a state, limitations period.  Some have borrowed the three-year limitations period in 42 U.S.C. § 1395y(b)(2)(B)(iii) that applies to the federal government's right of action to recover from primary payers.  *See, e.g., MSP Recovery Claims Series 44, LLC v. Bunker Hill Ins. Co.*, 2023 WL 4744739, at *6 (D. Mass. July 25, 2023) (collecting cases).  The Second Circuit, in contrast, has applied the six-year limitations period under the False Claims Act.  *See Manning v. Utilities Mut. Ins. Co., Inc.*, 254 F.3d 387, 394 (2d Cir. 2001) (holding that the analogous six-year statute of limitations under the False Claims Act, 31 U.S.C. § 3731(b)(1), applies to § 1395y(b)(3)(A)).

(11th Cir. 2022) (applying § 1658 after finding Medicare Part C created MAOs and granted them a statutory right to seek reimbursement); *MSP Recovery Claims Series 44, LLC v. Bunker Hill Ins. Co.*, 2023 WL 4744739, at *8 (D. Mass. July 25, 2023) (same).  However, not all courts have agreed with that analysis.  *See MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co.*, 2022 WL 3572439, at *2 (S.D. Ohio July 25, 2022) (rejecting the application of § 1658 because "the creation of MAOs did not create an entirely new cause of action and liabilities").

The court in *Nationwide Mutual* relied on the fact that "other types of private Medicare providers existed before the creation of the private cause of action"—meaning that when MAOs were created, they fell under that pre-existing right.  *Nationwide Mut. Ins. Co.*, 2022 WL 3572439, at *2 (citing *In re Avandia Mktg.*, 685 F.3d at 360).  The First Circuit's approach in *Mercado*, however, appears to require a different conclusion.  The fact that Part C created MAOs is a "substantive effect."  *See In re Avandia Mktg.*, 685 F.3d at 360; *Mercado*, 814 F.3d at 587.  Plaintiff's claims "necessarily depend" on the amendment, because if MAOs did not exist, they could not have a right to sue.  *See Mercado*, 814 F.3d at 587.  Part C could not be described as "clarif[ying] existing law"; instead, it created a new type of entity to take advantage of pre-existing rights and liabilities.  *See Jones*, 541 U.S. at 384 n.18.

Congress is not required to "augment[] the substantive scope of a federal law [to] take its limitations period from section 1658"—that is, even "a purely procedural addition" may suffice.  *Millay v. Maine Dep't of Lab., Bureau of Rehab., Div. for Blind & Visually Impaired*, 762 F.3d 152, 155 (1st Cir. 2014).  That suggests that an amendment need not broaden the substantive scope of a law and may, instead, create a new party to take advantage of the cause of action to qualify as "ma[king] possible" a plaintiff's claim.

For example, in *Mercado*, plaintiff qualified as having a "disability" only by virtue of the

24

post-1990 ADA amendments.  814 F.3d at 583-84.  Thus, while she sued under a pre-existing

cause of action, later amendments had expanded the meaning of the term "regarded as having

such an impairment" such that the court found her claim to have been "made possible" by a post-

1990 enactment.  *Id.* at 589.  That result is consistent with the goals of "reduc[ing] the need for

litigation about how best to fill the 'void' that arises when statutes fail to specify the limitations

period applicable" that led to the "broad[]" construal in *Jones*, *Millay*, and *Mercado*.  *Id.* at 591

(citing *Jones*, 541 U.S. at 380-82; *Millay*, 762 F.3d at 155-57).

Consistent with that approach, and because plaintiff's claim was "made possible" by a

post-1990 enactment, the Court concludes that § 1658 applies, and that therefore the relevant

limitations period is four years.

### (2)    Accrual

Determining that a four-year limitations period applies does not, however, end the

dispute.  Plaintiff contends that regardless of which statute of limitations applies, their claims are

timely because the entitlement of an MAO to reimbursement does not accrue until sixty days

after an insurer pays the beneficiary.  *See* 42 U.S.C.A. § 1395y(b)(3)(A) ("There is established a

private cause of action for damages (which shall be in an amount double the amount otherwise

provided) in the case of a primary plan which fails to provide for primary payment (or

appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).").

Courts are divided as to when a cause of action asserted under § 1395y(b)(3)(A) accrues.

*See e.g.*, *Tower Hill Prime Ins. Co.*, 43 F.4th at 1267 (holding that the cause of action accrued

when the MAO paid patients' medical bills); *Bunker Hill Ins. Co.*, 2023 WL 4744739, at *8

(holding that the cause of action accrues when primary payers report their status to CMS and the

information becomes discoverable by MAOs); *MSP Recovery Claims, Series LLC v. Plymouth*

*Rock Assurance Corp., Inc.*, 2023 WL 2633907, at *12 n.14 (D. Mass. Mar. 24, 2023) ("[T]he cause of action does not even begin to accrue under the statute until 60 days after settlement.").

The complaint in this action was filed on July 28, 2022.  The accidents at issue occurred on February 8, 2017, for A.D. and on June 15, 2017, for P.R.  (Compl. ¶¶ 25, 46).  According to plaintiff's exhibits, BCBSMA paid medical expenses between February 17 and November 3, 2017, for A.D. and between July 14 and December 1, 2017, for P.R.  (Compl. Exs. B, C).  The complaint does not allege when Hanover made payments to resolve either beneficiary's claim. However, Hanover included a settlement letter with its motion to dismiss that is incorporated by reference into the complaint, which indicates that a Hanover entity settled with P.R. on June 21, 2019.  (ECF No. 17, Ex. B).

At the point at which the MAO paid the medical bills, there was not necessarily a cause of action under § 1395y(b)(3)(A).  The statute provides that "[t]he Secretary may make [a conditional] payment under this subchapter with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly."  42 U.S.C. § 1395y(b)(2)(B)(i).  This payment is "conditioned on reimbursement . . . in accordance with the succeeding provisions of this subsection."  *Id.*

The succeeding provisions then state that a primary plan must reimburse "with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service."  *Id.* at § 1395y(b)(2)(B)(ii).  Thus, there is some set of bills paid by MAOs that are not reimbursable and that would not give rise to a cause of action.  MAOs are not entitled to reimbursement until "it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service."  *Id.*  As

26

discussed, reporting on CMS, without more, is insufficient to demonstrate such responsibility. Instead, the statute requires a judgment, settlement, or payment by "other means." *Id.*

The complaint contains plausible allegations that such a triggering event—that is, an event signaling defendant's responsibility to make payment—was not reasonably discoverable at the time it occurred. (*See, e.g.*, Compl. ¶¶ 22, 32-34, 53, 55-57). "[P]ursuant to the federal discovery rule, accrual is delayed until the plaintiff knows, or should know" of those acts that comprise a complete and present cause of action. *Ouellette v. Beaupre*, 977 F.3d 127, 136 (1st Cir. 2020).[11]

Normally, the relevant factual inquiry is whether the plaintiff availed itself of generally available information and the results of reasonable further inquiry. *See id.* at 137 (discussing the facts necessary for a plaintiff to file a § 1983 suit); *Donahue v. United States*, 634 F.3d 615, 624 (1st Cir. 2011) (same); *McIntyre v. United States*, 367 F.3d 38, 52 (1st Cir. 2004) (discussing a duty to inquire in the FTCA context). Although that may not be required in this context, the complaint alleges that MSP used available information and made direct inquiries to defendants. (*See* Compl. ¶¶ 32-34, 55-57).

Here, the June 21, 2019 settlement letter suggests that as to P.R., the cause of action may not have accrued until that date, at the earliest. Because the complaint was filed within the four-year period after June 21, 2019, it appears to be within the limitations period as to P.R. Because information concerning any responsibility for payment as to A.D. was allegedly unavailable after reasonable inquiry, it is unclear when that claim accrued. Accordingly, the question of when

---

[11] While in some cases an injury is immediately apparent, in others, facts about causation may be difficult to obtain by plaintiff. *Ouellette*, 977 F.3d at 136. The First Circuit has applied the discovery rule to many types of claims, making it a "general rule." *Id.* at 136 n.7; *Rakes v. United States*, 442 F.3d 7 (1st Cir. 2006). "[T]he federal discovery rule delays accrual until 'a reasonably prudent person similarly situated' to the plaintiff would discover these two key pieces of factual information—namely, the existence of the injury and its probable cause." *Ouellette*, 977 F.3d at 136 (quoting *Jardin De Las Catalinas Ltd. P'ship v. Joyner*, 766 F.3d 127, 133 (1st Cir. 2014)).

MSP (or BCBSMA) reasonably should have been aware of a potential cause of action is better reserved until after the development of a factual record.  The motion to dismiss on the basis of statute of limitations will be denied without prejudice.

*       *       *

In short, Count 1 sufficiently alleges a claim under § 1395y(b)(3)(A) against defendants as to the A.D. and P.R. matters.  Plaintiff, however, seeks to go much farther than that; it also seeks to use those two (somewhat threadbare) claims to "obtain the discovery" it needs to pursue other claims against defendants.  (Compl. ¶ 20, 44).  But that rationale puts the cart—and a very large cart at that—before the horse.  Specific allegations precede discovery, not the reverse. *Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir. 1988) ("Discovery is not 'a fishing expedition'; parties must disclose some relevant factual basis for their claim before requested discovery will be allowed.").  Although the complaint specifically alleges that "auto insurers" generally shirk their reporting obligations and fail to make payments to secondary payers, (Compl. ¶ 19), it does not specifically allege that any of the defendants has such a practice.  And it appears that plaintiff has the means to identify claims arising under § 1395y(b)(3)(A), as it has apparently done in the cases of A.D. and P.R.  (*Id.* ¶ 18).

In any event, this case concerns claims involving two individuals, and will be limited to that.  Accordingly, the Court will limit the scope of Count 1 to the claims involving A.D. and P.R.

### 3.      Count 2:  28 U.S.C. § 2201

"The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, empowers a federal court to grant declaratory relief in a case of actual controversy." *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 534 (1st Cir. 1995).  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). "The Act 'neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies." *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 39 (1st Cir. 2006) (quoting *El Dia, Inc. v. Hernandez Colon*, 963 F.3d 488, 492 (1st Cir. 1992)). "Consequently, federal courts retain substantial discretion in deciding whether to grant declaratory relief." *Ernst & Young*, 45 F.3d at 534. A court "should consider the totality of the circumstances" when deciding whether to award a declaratory judgment. *El Dia*, 963 F.2d at 494.

The complaint alleges that plaintiff is entitled to a declaratory judgment under 42 C.F.R. § 411.25(a) and Massachusetts law "establishing that [defendants] ha[ve] a historical, present, and continuing duty to reimburse BCBSMA for payments made on behalf of beneficiaries' accident-related medical expenses." (Compl. ¶ 79).[12] It also seeks "a declaration of what amounts are due and owing by [defendants] to BCBSMA." (*Id.*). It proposes that plaintiff's database of claims should be compared with that of defendants to identify "each claimant for whose benefit BCBSMA provided or paid for items or services and for which Hanover was the primary payer" and determine how much money is owed to MSP for each claim. (*Id.* ¶¶ 88-89).

Defendants do not appear to address Count 2 specifically, but do contend that § 1395y(b)(2)(A) does not provide a remedy beyond damages. (Defs.' Mem. at 3). Defendants further contend that plaintiff improperly seeks to use the declaratory judgment claim to obtain

---

[12] Plaintiff does not cite Massachusetts law in its complaint, but clarifies in its response to the motion to dismiss that it seeks a declaratory judgment that it is entitled to an equitable accounting of the amounts owed by defendants under Massachusetts law. (*See* Pl.'s Opp. at 19).

The complaint also cites other federal regulations that it contends obligate defendants to provide MAOs with information about expenses covered by their insurance policies. (*See* Compl. ¶¶ 23, 37, 42). However, Count 2 does not mention these regulations.

discovery to which it would not otherwise be entitled.  Count 2 does not, of course, actually request discovery; rather, it requests a declaratory judgment that defendants are required to share certain information with plaintiff.

The Declaratory Judgment Act allows federal courts to "declare the rights and other legal relations of any interested party."  28 U.S.C. § 2201.  There is no obvious reason why that statute should not apply in the present circumstances.  Whether, and to what extent, discovery should be permitted as to that count is not an appropriate question to consider at this stage of the proceedings; again, this lawsuit involves the claims relating to only two individuals.  Certainly, plaintiff will not be permitted to use a count seeking a declaratory judgment as an excuse for a fishing expedition in hopes of obtaining information to support a claim.

In short, Count 2 alleges, with sufficient particularity to survive a motion to dismiss, that plaintiff is entitled by law to certain information, and that defendants are required to provide plaintiff with that information.  While there may be other potential issues as to the viability of plaintiff's request for declaratory judgment, defendants have not raised them at this stage.  For now, the motion to dismiss will be denied as to Count 2.

## III.   <u>Motion for Supplemental Relief</u>

Plaintiff's motion for supplemental relief requests that the court order defendants to "provide the correct names of its subsidiaries that covered and settled the claims for P.R. and A.D." (ECF No. 19 at 4).

As discussed, the Section 111 reporting as to A.D. and P.R. lists The Hanover Insurance Group, Inc., as the primary payer.  (*Id.* at 2).  Defendants have asserted that the holding company was not the primary payer and was listed as a stand-in for one of its subsidiaries, as allowed by CMS guidance.  They also assert that none of them was the primary payer for the A.D. or P.R claims.

Rule 26 allows a party to seek discovery before a Rule 26(f) conference "by court order." Fed. R. Civ. P. 26(d)(1).  Courts in this district have used a five-factor test from *Sony Music Entertainment Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004), to evaluate whether it is appropriate to order limited discovery to uncover the identity of an unknown defendant.  *See, e.g.*, *Strike 3 Holdings, Inc. v. Doe*, 621 F. Supp. 3d 145, 149 (D. Mass. Aug. 8, 2022).  Under that test, courts evaluate:

> (1) a concrete showing of a prima facie claim of actionable harm; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the party's expectation of privacy.

*Sony*, 326 F. Supp. 2d at 564-65.  Other courts evaluate whether such a request is relevant and proportional.  *E.g.*, *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 (D.C. Cir. 2020).

Plaintiff asserts that it "cannot otherwise obtain [the names] before full discovery."  (ECF No. 19 at 6).  However, plaintiff does not elaborate further, and it is by no means obvious why the issue cannot await the normal discovery process.  Furthermore, it is not clear that there is a "central need" for the names to advance the claim.  As plaintiff points out, it is entirely possible that defendants will disclose the names as part of their initial disclosures.  And plaintiff will certainly be able to request the names through discovery.  In sum, it is not clear that awarding limited discovery on this motion is necessary, or would even expedite the resolution of this action.

Accordingly, the Court will deny plaintiff's motion for supplemental relief without prejudice.

## IV.   <u>Conclusion</u>

For the foregoing reasons,

1.      As to Count 1, defendants' motion to dismiss is GRANTED in part as to The

31

Hanover Insurance Group, Inc, and DENIED in part as to The Hanover Insurance

Company, The Hanover American Insurance Company, and The Hanover

National Insurance Company;

2. As to Count 2, the motion to dismiss is DENIED; and

3. Plaintiff's motion for supplemental relief is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  September 21, 2023                    Chief Judge, United States District Court