UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MSP RECOVERY CLAIMS SERIES 44, LLC, <br>           Plaintiff, <br><br> v. <br><br> THE HANOVER INSURANCE COMPANY, INC., et al., <br><br>           Defendants. | Civil Action No. <br> 22-40087-FDS |

# MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

**SAYLOR, C.J.**

This is a dispute concerning reimbursement of certain medical expenses pursuant to the Medicare Secondary Payer Act of 1980, 42 U.S.C. § 1395y(b) *et seq*.

Plaintiff MSP Recovery Claims Series 44, LLC ("MSP") filed its initial complaint in this action on July 28, 2022. It has now moved pursuant to Rule 15 for leave to file an amended complaint. The proposed amended complaint ("PAC") seeks to (1) account for a post-suit transfer of interest from plaintiff to its successor-in-interest and proposed new plaintiff, MSP Recovery Claims, Series LLC ("MSP Series LLC"); (2) substitute two new defendants, The Massachusetts Bay Insurance Company ("Massachusetts Bay") and Citizens Insurance Company of America ("Citizens"), for the original defendants; (3) add a claim for breach of contract against Massachusetts Bay; (4) separate plaintiff's claims for reimbursement into two separate counts against Massachusetts Bay and Citizens; and (5) redefine the scope of the requested declaratory judgment. In addition, plaintiff requests that the amended complaint relate back to

the original complaint pursuant to Rule 15 (c).

For the following reasons, that motion will be denied as to the request for declaratory relief (proposed Count 4) and granted as to the remaining amendments.

## I.     Background

### A.     The Parties

MSP is the assignee of Blue Cross Blue Shield of Massachusetts ("BCBSMA"). The proposed new plaintiff, MSP Series LLC, is MSP's successor-in-interest.

BCBSMA is a Massachusetts health insurer and Medicare Advantage Organization ("MAO"). (Compl. ¶ 24). Medicare Advantage is a Congressionally created program for providing Medicare benefits through private health insurers. (*Id.* ¶ 3). In substance, Medicare pays MAOs, like BCBSMA, a fixed amount, and the sponsor pays the health-care expenses of its enrollees.

The original four defendants—The Hanover Insurance Group, Inc.; The Hanover Insurance Company, Inc.; The Hanover American Insurance Company; and The Hanover National Insurance Company, Inc. (which MSP referred to collectively as "Hanover")—were alleged to be property and casualty insurers. However, according to MSP, The Hanover Insurance Group is "a mere holding company and the corporate parent" of Massachusetts Bay and Citizens, and (it contends) it did not know that fact at the time the complaint was filed. (Mem. at 2). The proposed new defendants, Massachusetts Bay and Citizens, are subsidiaries of The Hanover Insurance Group and are the responsible insurers for the two claims at issue in this case. (*Id.* at 2, Ex. A at 14 ¶ 2).

### B.     Factual Background

In the original complaint, MSP alleged that "Hanover [was] a property and casualty insurer that is in the business of collecting premiums in exchange for taking on the risk that its

insured will be injured and that Hanover will be contractually obligated to pay for its insured's accident-related medical care." (Compl. ¶ 5).

The original complaint alleged that Hanover, as a primary plan under 42 U.S.C. § 1395y(b)(2), had two duties under the Medicare Secondary Payer Act: "(1) to notify the secondary payer . . . of Hanover's primary payer status, and (2) to repay the secondary payer, within 60 days." (*Id.* ¶ 6.). It alleged generally that "auto insurers have disregarded for more than a decade their repayment obligations to MAOs," and specifically that Hanover has failed to comply with those statutory duties when entering into settlements. (*Id.* ¶¶ 4, 21). Because, according to MSP, "[t]he only way to fully identify all secondary payments that auto insurers failed to reimburse is by comparing an MAO's and an auto insurer's claims data," it set forth two examples of representative beneficiaries whose reimbursement histories allegedly illustrate Hanover's violations. (*Id.* ¶¶ 19-21).

First, the original complaint described allegations concerning A.D., an enrollee in a Medicare Advantage plan sponsored by BCBSMA. (*Id.* ¶ 24). On February 8, 2017, A.D. was injured in an accident. (*Id.* ¶ 25). The original complaint alleged that A.D.'s accident-related costs were covered under a no-fault policy issued by Hanover. (*Id.* ¶ 26). However, MSP contends that it became aware, through Hanover's answers to interrogatories, that Massachusetts Bay was actually the insurer that processed A.D.'s liability claim. (Mem. at 2; Mem. Ex. A at 14 ¶ 2). That mistake, MSP contends, was "driven by how the Hanover companies reported the . . . A.D. [claim] to the government." (Mem. at 2). For A.D.'s claim, the primary plan was reported as "The Hanover Insurance Group, Inc." although that entity is a holding company. (*Id.*). It further alleged that A.D.'s medical providers charged BCBSMA $50,367.56, of which it paid $31,670.06. (Compl. ¶ 27).

According to the original complaint, "Hanover" reported information to the Centers for Medicare & Medicaid Services ("CMS") about A.D.'s accident. (*Id.* ¶ 29).[1] The original complaint alleged that MSP became aware of that reporting in 2021 and then demanded repayment from "Hanover." (*Id.* ¶ 32).[2] In correspondence in April and May 2021, "Hanover" asserted that MSP had sent its demand letter to the wrong entity; that it had records of A.D.'s claim, including the "ultimate settlement of her claim with the primary payer entity"; and that A.D. "was not the insured." (*Id.* ¶¶ 32-34).

Second, the original complaint described allegations concerning P.R., who is also an enrollee in a Medicare Advantage plan sponsored by BCBSMA. (*Id.* ¶ 45). According to the original complaint, P.R. was injured in an accident on June 15, 2017, and "Hanover's insured" was responsible for the accident. (*Id.* ¶¶ 46-47). As with A.D., MSP contends that it became aware through answers to interrogatories that Citizens was the insurer who processed P.R.'s liability claim. (Mem. at 2; Mem. Ex. A at 14 ¶ 2). That mistake, MSP again contends, was "driven by how the Hanover companies reported the . . . P.R. [claim] to the government." (*Id.*). Like A.D.'s claim, the primary plan for P.R.'s claim was reported as "The Hanover Insurance Group, Inc." although that entity is a holding company. (*Id.*). The original complaint alleged that P.R.'s medical providers charged BCBSMA $39,751.87, of which BCBSMA paid $9,272.17. (*Id.* ¶ 48). The original complaint further alleged that "Hanover indemnified its insured tortfeasor and made payments pursuant to a settlement with P.R." (*Id.* ¶ 49).

According to the original complaint, "Hanover" reported information to CMS about P.R.'s accident and "admitted its primary payer status." (*Id.* ¶ 50). However, "Hanover failed to

---

[1] Massachusetts Bay and Citizens had allowed The Hanover Insurance Group, as their corporate parent company, to register as their agent for reporting claims to the government. (*See* Mot. to Dismiss at 10, ECF No. 17).

[2] The original complaint did not clarify the Hanover entity with which MSP corresponded.

4

remit [payment to] or reimburse" BCBSMA for P.R.'s accident-related injuries. (*Id.* ¶ 52). In correspondence with MSP in 2021, "Hanover" allegedly "took pains to avoid disclosing the identity of the correct Hanover entity" involved in P.R.'s case, but "admit[ted] that the insurance entity involved had settled the P.R. cla[i]m in 2019." (*Id.* ¶ 56). "Hanover" allegedly stated that "the insurance company involved had attempted to shift its primary payer responsibilities to P.R. through contractual indemnity language" in the settlement. (*Id.*).

C.     **Procedural Background**

MSP filed the original complaint on July 28, 2022. It asserted two counts against the Hanover defendants: a private cause of action under 42 U.S.C. § 1395y(b)(3)(A) for failing to reimburse BCBSMA for conditional payments made to cover medical costs (Count 1), and a request for declaratory judgment pursuant to 28 U.S.C. § 2201 (Count 2). In addition, MSP filed a motion for supplemental relief requesting that the court order defendants to provide the correct names of its subsidiaries that covered A.D.'s and P.R.'s claims.

The Hanover defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. That motion was granted in part and denied in part.

As to Count 1, the Court granted the motion to dismiss as to The Hanover Insurance Group but denied the motion as to The Hanover Insurance Company, The Hanover American Insurance Company, and The Hanover National Insurance Company. *MSP Recovery Claims, Series 44 LLC v. Hanover Ins. Grp. Inc.*, 2023 WL 6160457 at *10 (D. Mass. Sept. 21, 2023). In doing so, the Court found that the complaint failed to allege sufficient facts to suggest why The Hanover Insurance Group—which is a holding company—could be found liable as a primary payer and found that MSP did not have standing to assert a claim against that defendant. *Id.*

As to Count 2, the Court denied the motion to dismiss MSP's request for declaratory

judgment, finding that the complaint sufficiently alleged that MSP is entitled by law to certain information. *Id.* at *17. Finally, the Court denied plaintiff's motion for supplemental relief. *Id.*

Plaintiff has now moved for leave to file an amended complaint.

## II.     Analysis

Under Rule 15(a), a party may amend a pleading without leave of court in certain relatively narrow circumstances. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether to grant a motion to amend, courts must examine the totality of the circumstances and exercise their "informed discretion in constructing a balance of pertinent considerations." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006) (citing *Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1517 (1st Cir. 1989)). District courts enjoy "significant latitude in deciding whether to grant leave to amend." *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008).

"[T]he liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases." *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 51 (1st Cir. 1998) (quoting 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1487, at 611 (2d ed. 1990)). Leave to amend may be denied because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, defendants do not oppose the amendment to the extent it (1) changes the identity of plaintiff; (2) substitutes Massachusetts Bay and Citizens for the originally named defendants; and (3) provides that the amended complaint relates back for Counts 1 and 3 under Rule 15(c).

Defendants do contend that the motion for leave to amend as to Count 2 and 4 should be denied on grounds of futility.

In the context of Rule 15, futility means that "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). In assessing futility, the district court "applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." *Id.*

On a motion to dismiss under Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a Rule 12(b)(6) motion, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). The complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

A.     **Count 2:  Subrogation**

In Count 2, plaintiff seeks to add a claim for breach of contract against Massachusetts Bay for failing to make payments covering A.D.'s injuries. (PAC ¶¶ 127-32). The PAC alleges that A.D.'s injuries and treatment were covered by a homeowner's policy issued by

7

Massachusetts Bay to A.D.'s daughter.  (*Id.* ¶¶ 79, 128).  It also alleges that "Massachusetts Bay admitted coverage was available under its MedPay Policy . . . and knew it was contractually obligated to pay for A.D.'s treatment." (*Id.* ¶ 92).  It further alleges that "[d]espite knowing BCBSMA was A.D.'s secondary payer and would likely have a lien once it paid for treatments, Massachusetts Bay chose not to contact BCBSMA." (*Id.* ¶ 129).  And it alleges that "[a]s an MAO, BCBSMA had a right to be 'subrogated to any individual, . . . or any other entity entitled to payment by a primary payer.'" (*Id.* ¶ 130) (quoting 42 C.F.R. § 411.26(a)) (citing 42 C.F.R. § 422.108(f)).

Defendants concede that BCBSMA paid for A.D.'s medical care, but dispute that BCBSMA (or MSP as its assignee) can pursue reimbursement from Massachusetts Bay.  (Opp. at 7).  Instead, defendants contend that MSP can pursue such reimbursement only from a tortfeasor.  (*Id.*) (citing *Frost v. Porter Leasing Corp.*, 386 Mass. 425, 426–27 (1982)).  Following from that assertion, defendants seem to contend that plaintiff could only file its claim against Massachusetts Bay under Massachusetts' direct-action statute, Mass. Gen. Laws ch. 214 § 3(9).  (Opp. at 7).  Defendants also contend that "[u]nder 'section 3(9) . . . an injured party [must] first obtain a judgment of liability against the insured before acting against the insurer.'" (*Id.* at 8) (quoting *Bay Club Members, LLC v. Selective Ins. Co. of Am.*, 654 F. Supp. 3d 1, 5 (D. Mass. 2023)).  And defendants contend that the claim is also time-barred under the three-year limitations period provided by Massachusetts law for subrogation actions.  (*Id.*) (citing Mass. Gen. Laws Ann. ch. 260, § 2A (West)).  According to defendants, a claim filed under the Massachusetts direct-action statute would ultimately fail, and therefore the amendment to Count 2 would be futile.  (*Id.*).

Plaintiff contends that "Hanover ignores that the policy insuring A.D. included . . . no-

8

fault/MedPay coverage, which does not require a finding of liability." (Reply at 7). It further contends that the Medicare Act preempts any state law that would interfere with an MAO's right to reimbursement. (*Id.* at 8). According to plaintiff, the Massachusetts laws that undergird defendants' theory would interfere with plaintiff's ability to recover under the MSP Act and are thus preempted. (*Id.*).

The subrogation right asserted in the proposed amended complaint arises under federal law. As the basis for that claim, the complaint cites 42 C.F.R § 411.26, which provides that "[w]ith respect to services for which Medicare paid, CMS is subrogated to any individual, provider, supplier, physician, private insurer, State agency, attorney, or any other entity entitled to payment by a primary payer." 42 C.F.R § 411.26. That regulation is based upon 42 U.S.C. § 1395y(b)(2)(B)(iv), which states that "The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iv).

Neither the regulation nor the statute which it is based upon mention MAOs. Nonetheless, plaintiff points to 42 C.F.R. § 422.108(f), which provides, in relevant part, "[t]he [MAO] will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter." 42 C.F.R. § 422.108(f). Subparts B through D include § 411.26—the right that CMS has to be subrogated by a primary payer. *See* 42 C.F.R § 411.26. Here, the language of those regulations suggests that the rights of CMS to be subrogated to a primary payer are applicable to MAOs. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created.").

9

Thus, while defendants' theory appears to be that plaintiff must bring a subrogation action under Massachusetts state law—which, it contends, would fail—plaintiff's subrogation right arises under the cited federal statutes and regulations. *See MAO-MSO Recovery II, LLC, Series PMPI, et al. v. GEICO, et al.*, 2024 WL 2924063 at *11 (D. Md. June 10, 2024) ("[b]ased on the language of [42 C.F.R. § 422.108(f)], the rights that an MAO may exercise to recover from a primary plan include CMS's subrogation right contained in 42 C.F.R. § 411.26."); *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, 2020 WL 5984382, at *13 (S.D. Fla. May 12, 2020) ("[c]ongress expressly created a right of action in the MSP Act and the statute's accompanying regulations include rights-creating language.").

Because plaintiff's asserted right to subrogation arises under federal law, the state common-law definition of subrogation offered by defendant does not have any direct bearing on nature of that federally created right. Furthermore, the definition offered by defendant is unduly narrow. While an insurer may be subrogated to an insured against a tortfeasor, that is not the only context in which subrogation can occur. Instead, even under Massachusetts law, subrogation refers to the more general legal concept of "the substitution of one person in place of another, whether as creditor, or as the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights remedies, or securities." *Unibank for Savings v. 999 Private Jet, LLC*, 410 F. Supp. 3d. 261, 265-66 (D. Mass. 2019) (quoting *Provident Co-op. Bank v. James Talcott, Inc.*, 358 Mass. 180, 188 (1970)). Because plaintiff would not be subrogating itself as a tort judgment creditor, the Massachusetts direct-action statute, Mass. Gen. Laws ch. 214 § 3(9), as defendants themselves assert, "is not relevant here." (Opp. at 7-8).

Even assuming for the sake of argument that the direct-action statute would apply to

10

plaintiff's subrogation claim, it would be preempted to the extent it conflicted with plaintiff's subrogation rights under federal law. State laws may be preempted by Congress explicitly through "express language" in a preemption provision, or implicitly "through [the] structure and purpose" of the statute. *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008). "In determining the preemptive scope of a congressional enactment, courts rely on the plain language of the statute and its legislative history to develop 'a reasoned understanding of the way in which Congress intended the statute' to operate." *First Med. Health Plan*, *Inc v. Vega*, 479 F.3d 46, 51 (1st Cir. 2007) (quoting *N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 74 (1st Cir. 2006)). Here, both the language of the Medicare Act and the purpose of the Medicare Advantage provisions demonstrate that the state laws defendants cite have been preempted by federal law.

First, the Medicare Act explicitly states that "[t]he standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part." 42 U.S.C. § 1395w-26(b)(3); *see* 42 U.S.C. § 1395w-112(g) ("The provisions of sections 1395w-24(g) and 1395w-26(b)(3) of this title shall apply . . . to [Medicare Advantage] organizations and [Medicare Advantage] plans under part C of this subchapter.") In turn, the relevant regulations directly implement the Medicare Act's preemption provision, stating that "the rules under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans." 42 C.F.R. § 422.108(f); *see GEICO, et al.*, 2024 WL 2924063 at *11 ("42 C.F.R. § [422.]108 . . . was promulgated to implement section 232 of the Medicare Modernization Act of 2003, specifically a provision stating that '[t]he standards established under this part shall supersede any State law or regulation . . . with respect to MA plans which are offered by MA organizations under this

11

part.'") (quoting 42 U.S.C. § 1395w-26(b)(3)).

Second, the legislative intent behind the Medicare Act and the establishment of the Medicare Advantage program also supports preemption of conflicting state laws. As the First Circuit noted, "[t]he legislative history of [42 U.S.C. § 1395w-26(b)(3)] clarifie[s] that "the [Medicare Advantage Program] is a federal program operated under Federal rules and that State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency." *First Med. Health Plan*, *Inc.*, 479 F.3d at 51 (quoting H. Conf. Rep. 108–391 at 557, reprinted in 2003 U.S.C.C.A.N. at 1926); *see also* Establishment of the Medicare Advantage Program, 40 Fed. Reg. 4588, 4620 (proposed Jan. 28, 2005) (to be codified at 42 C.F.R. pts. 417, 422) ("Section 232 of the MMA amended section 1856(b)(3) of the Act to remove all ambiguity related to State authority over the MA program. The Congressional intent is now unambiguous in prohibiting States from exercising authority over MA plans in any area other than State licensing laws and State laws relating to plan solvency."). The previous iteration of the statute was more narrow and only preempted state laws that were "inconsistent" with the federal standard in the Medicare Act. *Meek-Horton*, 915 F. Supp. 2d at 492; *see* 42 U.S.C. § 1395w–26(b)(3) (2000). The current provision, however, broadens the statute to preempt *all* state laws, other than the narrow exception for state licensing and solvency laws. *See Uhm v. Humana, Inc.*, 620 F.3d 1134, 1148-50 (9th Cir. 2010); 42 U.S.C. § 1395w-26(b)(3).

In short, the state laws on which defendants rely were preempted by Congress in the Medicare Act. *See First Med. Health Plan*, *Inc.*, 479 F.3d at 51; *Uhm*, 620 F.3d at, 1148-50.; *Meek-Horton*, 915 F. Supp. 2d at 492; *Potts v. Rawlings Co.*, *LLC*, 897 F. Supp. 2d 185, 194-95 (S.D.N.Y. 2012) (finding that a New York anti-subrogation statute was preempted based upon 42 U.S.C. § 1395w-26(b)(3) and 42 C.F.R. § 422.108(f)).

It is certainly possible that the breach-of-contract claim is time-barred. The Court previously concluded that the federal "catchall" four-year statute of limitations applied to the private-right-of-action claims in this case. (Mem. & Order on Mot. to Dismiss at 21-25, ECF No. 44). And while the right to subrogation now invoked by the proposed amended complaint also arises under federal law—and in some sense can be said to "make possible" the claim in Count 2—it is not a cause of action in itself, but only the right to assert the claim of another. For this reason, the statute of limitations applied to subrogatory claims is generally the statute of limitations applicable to the underlying claim itself. *See, e.g.*, *Dow Chem. Corp. v. Weevil-Cide Co.*, 897 F2d 481, 484 (10th Cir. 1990) (collecting cases).

Here, the proposed amended complaint refers to the underlying claim as a "breach of contract" claim. (PAC at 32). Defendant appears to assert that the three-year statute of limitations applicable to "tort, actions of contract to recover for personal injuries, and actions of replevin" ought to apply to that underlying "breach of contract" claim. Mass. Gen. Laws ch. 260 § 2A; (Opp. at 8-10). It is also possible, however, that the longer six-year statute of limitations period for contract actions, Mass. Gen. Laws ch. 260 § 2A, might apply, as "the essential nature" of the claim could be characterized as contractual. *Cf. Seifer v. GEICO*, 530 F.Supp.3d 123, 126 (D. Mass. 2021).

In light of the additional complication of determining the accrual date of such a claim in this context, the Court will not deny leave to amend on the basis of timeliness, but will reserve decision on this point until further briefing and factual development on the issue. Accordingly, the motion for leave to amend the complaint as to Count 2 will be granted.

**B.      Count 4:  Declaratory Judgment**

The final issue is whether the PAC asserts a plausible claim for a declaratory judgment. Count 4 of the PAC does not assert a cause of action, but instead simply seeks three declarations:

13

(1) "a declaration that when defendants receive notice that claims they are insuring involve plaintiff's assignor as the secondary payer, 42 C.F.R. § 411.25 applies," and that "[a]s a result, Defendants have a duty to notify plaintiff of the 'specific situation and circumstances' of such claims, including the name of the specific Hanover entity that provided coverage for the claims" (PAC ¶ 152); (2) a declaration that "[d]efendant's duty to notify under 42 C.F.R. § 411.25 is independent of its duty to make Section 111 reports to the government" (*Id.* ¶ 153); and (3) "a declaration that Massachusetts Bay or Citizens have a duty to share information about claims they know or should know are insured by Plaintiff, as BCBSMA's assignee, regardless of whether Defendants possess all the data points necessary to complete Section 111 reporting with the government." (*Id.* ¶ 159). In substance, the three requested declarations would state that defendants have a legal duty under certain circumstances to provide notice and to share information to BCBSMA. There are multiple issues, however, with the proposed amendment.

To begin, the Declaratory Judgment Act does not supply an independent cause of action. *Tyngsboro Sports II Solar, LLC v. Nat'l Grid USA Serv. Co., Inc.*, 88 F.4th 58, 64 (1st Cir. 2023). It simply "enlarge[s] the range of remedies available in the federal courts." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). The "availability of [declaratory] relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Therefore, plaintiff must identify an underlying cause of action for which it seeks declaratory relief. *See Westinghouse Elec. Co. LLC v. Korea Elec. Power Corp.*, 694 F. Supp. 3d 48, 52, 54 (D.D.C. 2023) (dismissing action for declaratory judgment where plaintiff failed to show underlying private right of action); *Garanigo v. Wyman-Gordon Co.*, 1994 WL 32661, at *1 (D. Mass. June 16, 1994) (dismissing counterclaim for declaratory judgment where defendant lacked private right of action under ERISA).

The PAC does not specify what cause of action, if any, plaintiff is asserting as a basis for declaratory relief. There are four counts in the complaint asserting three different theories of recovery. None, however, assert a claim that, if proved, would support the requested relief.

Counts 1 and 3 assert a private right of action under 42 U.S.C. § 1395y(b)(3)A) for reimbursement of money—that is, a right of action to recover from a primary payer for reimbursement owed under the MSP Act. Neither count asserts a right of action, express or implied, to obtain information. Moreover, the private right of action extended to secondary payers under the Medicare Act applies to cases in which "a primary plan . . . fails to provide for primary payment (or appropriate reimbursement)"; it does not extend (at least not expressly) to cases in which primary payers fail to abide by information-sharing or reporting requirements. 42 U.S.C. § 1395y(b)(3)(A).

Count 2 asserts a breach-of-contract claim, arising in part out of a regulatory right to subrogation. That count, however, asserts that Massachusetts Bay had a contractual obligation to pay for A.D.'s medical expenses. It does not assert a contractual obligation to provide information to A.D. It does refer to "Massachusetts Bay's failure to reach out to BCBSMA to provide information," but does not explain how that failure is a contractual breach. Furthermore, the regulatory right of subrogation that would enable plaintiff to assert the contractual claim appears to contemplate only actions enforcing contractual rights to payment, not to information. *See* 42 C.F.R. § 411.26(a) ("[MAOs are] subrogated to any individual . . . entitled *to payment* by a primary payer.") (emphasis added).

As noted, Count 4 asserts a claim for declaratory relief, which is simply a claim for a particular form of remedy, not an assertion of a cognizable cause of action. It does allege that 42 C.F.R. § 411.25 imposes a duty on primary plans to share certain information with an MAO, but

15

it does not assert that there is a right of action to enforce that requirement, whether express or implied.

In short, if there is a right of action that would support the granting of the requested declaratory relief, it is not identified in the PAC. It is certainly true that the notice and information-sharing requirements facilitate the reimbursement of MAOs and, where necessary, facilitate the enforcement of their right to reimbursement. And for present purposes, the Court must assume that defendant violated its duties to provide notice and otherwise share information. But it does not necessarily follow that plaintiff has a right of action to enforce those duties—and the Court cannot grant declaratory relief that is unmoored from any legal right of action.

Conceivably, such a right of action might exist. It is at least possible, for example, that a right to enforce a duty of notice might be implied under 42 U.S.C. § 1395y(b)(3)A) and 42 C.F.R. § 411.25—although there does not appear to be any authority supporting the implication of such a right, and the Supreme Court has indicated that recognizing implied causes of action is a "disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017). [3] But it is up to plaintiff, not the Court, to formulate its claims. Because plaintiff has not done so here, the motion to amend the complaint as to Count 4 will be denied as futile.

---

[3] Even if plaintiff did have a cause of action to enforce the relevant information-sharing requirements, it is not clear that plaintiff would have standing to request "a declaration that Defendants' duty to notify under 42 C.F.R. § 411.25 is independent of its duty to make Section 111 reports to the government." (PAC ¶ 153). That request seeks a declaration of law concerning defendants' obligations as a general matter, not as they concern an "actual controversy" between two parties.

**III.     Conclusion**

For the foregoing reasons, Plaintiff's Motion for Leave to File an Amended Complaint is DENIED as to the proposed claim for declaratory relief (proposed Count 4) and GRANTED as to the remaining proposed amendments.  Plaintiff is directed to file an Amended Complaint consistent with this order within 14 days (that is, by October 4, 2024).  For the purposes of filing an answer or otherwise responding, the Amended Complaint will be treated as taking effect on the date it is filed.  The Amended Complaint is deemed to relate back to the date of the original pleading.

**So Ordered.**

|  |  |
|---|---|
| Dated:  September 20, 2024 | /s/  F. Dennis Saylor IV<br>F. Dennis Saylor IV<br>Chief Judge, United States District Court |