## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| **MSP RECOVERY CLAIMS, SERIES** ) | |
| **LLC,** ) | |
|   **Plaintiff,** ) | |
| ) | **Civil Action No.** |
|   **v.** ) | **22-40087-FDS** |
| ) | |
| **MASSACHUSETTS BAY INSURANCE** ) | |
| **COMPANY, et al.,** ) | |
| ) | |
| ) | |
|   **Defendants.** ) | |
| _____ ) | |

### MEMORANDUM AND ORDER ON PARTIES' CROSS-MOTIONS
### FOR SUMMARY JUDGMENT AND DEFENDANT'S
### MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT

**SAYLOR, J.**

This is a dispute concerning reimbursement of certain medical expenses pursuant to the Medicare Secondary Payer Act of 1980, 42 U.S.C. § 1395y(b) *et seq*. ("MSP Act").

Plaintiff MSP Recovery Claims, Series LLC ("MSPRC") is the assignee of Blue Cross Blue Shield of Massachusetts ("BCBSMA"), a health insurer. Defendants Massachusetts Bay Insurance Company ("Massachusetts Bay") and Citizens Insurance Company of America ("Citizens") are property and casualty insurers that sell, among other products, automobile insurance. According to the amended complaint, defendants sell policies that provide coverage to their insureds for accident-related medical care, either to the insured directly or to third parties injured by the insured.

The complaint alleges that both Massachusetts Bay and Citizens have failed to reimburse BCBSMA for conditional payments made to cover medical costs, as required by 42 U.S.C.

§ 1395y.  It asserts claims against Massachusetts Bay and Citizens under 42 U.S.C.

§ 1395y(b)(3)(A) (Counts 1 and 3, respectively), seeking double damages for the alleged failures

to reimburse, as well as a breach of contract claim against Massachusetts Bay (Count 2).

Defendants have moved for summary judgment on all counts, and plaintiff has cross-

moved for summary judgment on Counts 1 and 3.  Defendant Citizens has also moved for leave

to file a third-party complaint asserting a claim for indemnification against P.R., its insured, on

the basis of an indemnification agreement allegedly made as part of a settlement.

For the following reasons, the motions for summary judgment will be granted in part and

denied in part, and Citizens' motion for leave to file a third-party complaint will be denied.

## I.    <u>Background</u>

The following facts are undisputed unless otherwise noted.

### A.    <u>The Parties</u>

MSPRC is a Delaware series limited liability company.  (Am. Compl. ¶ 11).  It is the

assignee of Blue Cross Blue Shield of Massachusetts ("BCBSMA") as to the claims asserted in

this lawsuit.  (*Id.* ¶¶ 43-50).

BCBSMA is a Massachusetts health insurer and a Medicare Advantage Organization

("MAO").  (Pl. Stmt. Mat. Facts ("PSMF") ¶ 1).  Medicare Advantage is a congressionally

created program for providing Medicare benefits through private health insurers. In substance,

Medicare pays MAOs, like BCBSMA, a fixed amount, and the sponsor pays the health-care

expenses of its enrollees.

Defendant Massachusetts Bay is an insurance company located in Massachusetts "that

issues liability and no-fault insurance policies."  (Am Compl. ¶ 14).

Defendant Citizens is also a Massachusetts-based insurance company "that issues liability and no-fault policies." (*Id.* ¶ 15).[1]

### B.     The Statutory Framework

Congress enacted the Medicare Secondary Payer Act in 1980. *See* 42 U.S.C. § 1395y(b) *et seq*. Under the Act, if both Medicare and a private insurer cover the same eligible expense, the private insurer would be the primary source of payment and Medicare the secondary option. "Medicare benefits became an entitlement of last resort, available only if no private insurer was liable." *MSP Recovery Claims, Series 44, LLC v. Quincy Mut. Fire Ins. Co.*, 2023 WL 4107038, at *2 (D. Mass. June 21, 2023) (quoting *Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1234 (11th Cir. 2016)).

Medicare will not pay for medical services if "payment has been made or can reasonably be expected to be made under . . . an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance," or other form of "primary plan." 42 U.S.C. § 1395y(b)(2)(A). However, Medicare may make conditional payments—that is, it may "make payment . . . with respect to an item or service if a primary plan . . . has not made or cannot reasonably be expected to make payment with respect to such item or service promptly." *Id.* § 1395y(b)(2)(B)(i).

Such conditional payments must be reimbursed by a primary plan "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." *Id.* § 1395y(b)(2)(B)(ii). The Act specifies that a primary plan's responsibility for a payment may be demonstrated by "a judgment, a payment conditioned upon the recipient's

---

[1] Both defendants are "direct subsidiaries of The Hanover Insurance Company, which is itself a subsidiary of the Hanover Insurance Group, Inc." (Am. Compl. ¶ 13).

compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." *Id.*

To recover reimbursements, the United States may bring an action and "collect double damages against" a primary plan that improperly fails to reimburse Medicare. *Id.* § 1395y(b)(2)(B)(iii). The statute also establishes "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)." *Id.* § 1395y(b)(3)(A).

### C.   Factual Background

#### 1.   Assignment of Claims

On December 18, 2018, BCBSMA assigned to MSP Recovery, LLC its recovery and reimbursement rights under the MSP Act for a specific set of claims. (PSMF ¶ 5). P.R.'s and A.D.'s claims were included in that assignment. (*Id.* ¶¶ 19, 23). On April 10, 2019, MSP Recovery, LLC assigned the rights it had acquired to Series 15-11-388, a designated series of MSP Recovery Claims, Series LLC. (*Id.* ¶ 8). On October 22, 2020, Series 15-11-388 assigned those rights to Series 44-20-388, a designated series of MSP Recovery Claims Series 44, LLC. (*Id.* ¶ 9). Finally, Series 44-20-388 assigned those rights to Series 23-05-1942, a designated series of MSP Recovery Claims, Series LLC, the current holder of the rights and plaintiff in this case. (*Id.* ¶ 10).

#### 2.   The A.D. Claim

A.D. was an enrollee in a Medicare Advantage plan sponsored by BCBSMA. (*Id.* ¶ 2, Ex. 1 ¶ 5). On February 8, 2017, A.D. was injured in a slip-and-fall accident on the front stoop of her daughter's home. (*Id.* Ex. 12 at 1). Her medical providers billed BCBSMA for her

accident-related treatments.  (*Id.* ¶ 59).  Her daughter's condominium was covered by a homeowner's insurance policy issued by Massachusetts Bay.  (*Id.* at ¶ 54).

That policy included both personal-liability coverage up to $300,000 and no-fault coverage for medical payments to others ("Med-Pay") up to $1,000.  (*Id.* Ex. 31 at H-0000002405).  One of the conditions for receipt of no-fault Med-Pay coverage under the policy is that "[t]he injured person or someone acting for the injured person" must provide Massachusetts Bay with "written proof of claim, under oath if required, as soon as is practical." (*Id.* at H-0000002422).  The personal-liability coverage requires an insured to "give written notice . . . as soon as is practical, which sets forth:  (1) [t]he identity of the policy and 'insured'; (2) [r]easonably available information on the time, place and circumstances of the accident or 'occurrence'; and (3) [n]ames and addresses of any claimants and witnesses." (*Id.*).  It also states that Massachusetts Bay "may investigate and settle any claim . . . that [it] decides is appropriate," (*Id.* at H-0000002418), and requires that, "at [Massachusetts Bay's] request" insureds are to "help [Massachusetts Bay] . . . [t]o secure and give evidence."  (*Id.* at H-0000002422).

On February 23, 2017, A.D. submitted a notice of claim providing the basic details of the accident and the insurance coverage sought.  (PSMF Ex. 19).  Upon review of that initial notice and the information provided along with it, a claims adjuster made the preliminary determinations that Massachusetts Bay's insured was 50% responsible for A.D.'s injuries, that there were "no coverage issues," and that "[c]overage [was] confirmed under policy HVN A038731."  (*Id.* Ex. 33 at 2-3).

Massachusetts Bay then began to investigate the claim.  From conversations with the insured, Massachusetts Bay learned of several treatments that A.D. had received and that A.D. was covered by a "[M]edicare [B]lue [C]ross advantage plan."  (Def. Stmt. of Mat. Facts

5

("DSMF") Ex. 2 at H-0000002478-50).  In a later conversation with the insured, the claims

adjuster reviewed the claims process and explained "that [M]edicare will have a lien and we

need to see what all the bills / [treatments] [are] and then evaluate to resolve once [A.D.] finishes

her [treatments]."  (*Id.* at H-0000002472-73).  At that point the claims adjuster sent the insured

an MSP consent-to-release form and a medical-authorization form.  (*Id.*).  Those forms were not

returned.

Neither A.D. nor insured ever submitted any actual medical bills or similar

documentation to Massachusetts Bay following A.D.'s initial notice of claim.  (Greenfield Aff.

¶ 3).[2]  And within a month of filing her notice, A.D. reached out to Massachusetts Bay to

withdraw her claim.  (PSMF Ex. 34).  Upon withdrawal, Massachusetts Bay informed A.D. and

the insured that no-fault Med-Pay coverage may be available under the policy; however, no one

ever submitted any proof of loss or otherwise pursued no-fault coverage under the policy.

(DSMF Ex. 2 at H-0000002471); (Greenfield Aff. ¶ 4).

### 3.    The P.R. Claim

On June 15, 2017, P.R. was injured in an automobile accident.  (DSMF ¶ 10).  The driver

of the other automobile was insured by Citizens.  (*Id.* ¶ 11).  On April 26, 2019, attorney Jeffrey

Beeler sent a demand letter to Citizens on behalf of P.R, detailing P.R.'s injuries and treatments,

and demanding settlement for the policy limit of $100,000.  (PSMF Ex. 14 at

H-0000001347-55).  Various providers had billed P.R.'s BCBSMA Medicare Advantage plan

$45,916.13 for medical services identified in the demand letter, and BCBSMA had made

---

[2] Plaintiff "disputed" that fact in its response to defendants' statement of facts.  However, its response did not actually contradict the assertion.  Instead, plaintiff's response simply pointed to evidence that Massachusetts Bay had received *some* information from A.D. in her initial notice of claim—there is not any evidence that A.D. or the insured submitted actual medical bills or other documentation to Massachusetts Bay following A.D.'s initial notice of claim.  (*See* Pl. Resp. to DSMF ¶ 6).

$11,450.98 in conditional payments for those services. (PSMF ¶¶ 25-30). On June 21, 2019, Citizens settled P.R.'s liability claim for $100,000. (*Id.* ¶ 31). That settlement covered the costs of treatments that had been paid by BCBSMA. (Greenfield 30(b)(6) Dep. at 147-48).

Prior to settling, Citizens was aware that BCBSMA had a lien on file relating to P.R.'s medical care and was aware of the basis for that lien. (Def. Resp. to PSMF ¶ 49). BCBSMA reached out to Citizens and Citizens' parent company multiple times requesting information concerning settlement of P.R.'s claim. (*Id.* ¶¶ 43-47). Citizens did not respond to those communications, and Citizens has not reimbursed BCBSMA or plaintiff to date.

### D.    Procedural Background

MSP Recovery Claims Series 44, LLC ("MSPRC 44") filed the original complaint against Hanover Insurance Group, Inc. and three related entities on July 28, 2022. It asserted two counts against the Hanover defendants: a private cause of action under 42 U.S.C. § 1395y(b)(3)(A) for failing to reimburse BCBSMA for conditional payments made to cover medical costs, and a request for declaratory judgment pursuant to 28 U.S.C. § 2201. In addition, MSPRC 44 filed a motion for supplemental relief requesting that the court order defendants to provide the correct names of its subsidiaries that covered A.D.'s and P.R.'s claims.

The Hanover defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. That motion was granted in part and denied in part.

MSPRC 44 then filed a motion for leave to file an amended complaint, and the Hanover defendants filed a motion for leave to file a third-party complaint. The motion to amend was granted in part and denied in part, resulting in the set of parties and claims currently before the Court. The motion for leave to file a third-party complaint was denied without prejudice to its renewal in light of the changes to the operative complaint.

After the amended complaint and answer were filed, the parties filed the cross-motions for summary judgment and motion for leave to file a third-party complaint that are now before the Court.

## II.    Cross-Motions for Summary Judgment

### A.    Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

"Generally, in deciding cross-motions for summary judgment, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration. . . . But where, as here, the motion and cross-motion seek a determination of the same issues, the Court may consider them together." *ExteNet*

*Sys., Inc. v. Vill. of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019) (internal citations and quotation marks omitted); *see also Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 496 (D.N.H. 1996) ("Because the issues raised in the motion and cross-motion are identical, the court will discuss and resolve [them] in unison.").

### B.    Analysis

#### 1.    MSP-Act Claim Against Massachusetts Bay (Count 1)

The MSP Act establishes a "private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)."  42 U.S.C. § 1395y(b)(3)(A).[3] Plaintiff contends that Massachusetts Bay is a primary plan that improperly failed to reimburse BCBSMA for payments made to cover medical care provided to A.D.  MAOs such as BCBSMA are not entitled to reimbursement until "it is demonstrated that [the] primary plan has or had a responsibility to make payment," *id.* § 1395y(b)(2)(B)(ii), and "the would-be primary payer's responsibility must be 'demonstrated' in some way prior to the suit for reimbursement," *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 771 (11th Cir. 2020).

The parties take opposite positions on the issue of whether Massachusetts Bay has, or had, a "demonstrated . . . responsibility" to make payment for A.D.'s medical care.  "A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim

---

[3] It appears to be the consensus among federal courts that MAOs may exercise the private right of action in the MSP Act.  *See In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012) ("MAOs are not excluded from bringing suit under the MSP private cause of action."); *MSP Recovery Claims, Series LLC & Series 17-04-631 v. Plymouth Rock Assurance Corp.*, 404 F. Supp. 3d 470, 481 (D. Mass. 2019) ("[A]n MAO may maintain an action under § 1395y(b)(3)(A)."); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 2392827, at *3 (C.D. Ill. May 25, 2018) (collecting cases).

against the primary plan or the primary plan's insured, or by other means."  42 U.S.C.

§ 1395y(b)(2)(B)(ii).  It is undisputed that Massachusetts Bay was not subject to any judgment,

did not make a payment under the relevant policy, and did not come to any settlement with A.D.

Thus, the question is whether Massachusetts Bay's responsibility to pay was demonstrated "by

other means."

A CMS regulation defines such "other means" as "including but not limited to a

settlement, award, or contractual obligation."  42 C.F.R. § 411.22(b)(3).  Accordingly, courts

have "held that the phrase 'other means' permit[s] demonstration of responsibility by a

contractual obligation."  *MAO-MSO Recovery II, LLC v. Mercury Gen.*, 2018 WL 3357493, at *9

(C.D. Cal. May 23, 2018) (finding "the Eleventh Circuit's analysis" of the issue "persuasive").[4]

There is no dispute that the Massachusetts Bay policy represents a contract, which in turn carries

---

[4] Most of those cases were decided according to the principle of *Chevron* deference.  *See, e.g. MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1359-60 (11th Cir. 2016) (applying *Chevron*).  *Chevron* has since been overruled by the Supreme Court.  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).  However, even absent a heightened deference to agency interpretation, treating a contractual obligation as a permitted "other means" of demonstrating responsibility is an appropriate interpretation of the statute.  Applying an established interpretive canon, the court in *Glover v. Philip Morris USA* interpreted the "other means" language as follows:

> Applying *ejusdem generis* here, the "by other means" language is preceded by specifically enumerated means by which a primary plan's responsibility to pay may be demonstrated:  a judgment and "a payment conditioned upon the recipient's compromise, waiver, or release . . . of payment for items or services included in a claim against the primary plan . . ." (i.e., a settlement).  In these situations, a primary plan has either been adjudicated as required to pay for medical services as to which Medicare is a secondary payer or has agreed to do so as part of a settlement.  In either case, the obligation of the primary plan to make the payment has already been established.  The "by other means" language in section 1395y(b)(2)(B)(ii) encompasses other instances of "like kind" where there is a previously established requirement or agreement to pay for medical services for which Medicare is entitled to be reimbursed, which instances Congress chose not to try to exhaustively enumerate.

380 F. Supp. 2d 1279, 1291 (M.D. Fla. 2005), *aff'd sub nom. Glover v. Liggett Grp., Inc.*, 459 F.3d 1304 (11th Cir. 2006).  A contractual obligation is an "instance[] of 'like kind' where there is a previously established requirement or agreement to pay for medical services."  *Id.*; *see MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1360 (11th Cir. 2016) ("A contract imposes obligations on the parties immediately, without any involvement of the courts.  While a lawsuit may be necessary to enforce a contract in the event of a breach, the obligations created by the contract exist as soon as it is executed.").  Thus, the Court agrees with the Eleventh Circuit's assessment that "a contractual obligation seems . . . to be an eminently reasonable method of demonstrating responsibility."  *Allstate*, 835 F.3d at 1360.

with it contractual obligations.  However, the mere "existence of a contractual obligation" does not "conclusively demonstrate[] liability under the MSP Act's private cause of action."  *Allstate*, 835 F.3d at 1361.  Instead, plaintiff must "prove[,] with evidence, that [defendant's] valid insurance contracts actually render [defendant] responsible for primary payment of the expenses [plaintiff] seeks to recover."  *Id.*  "And [defendant] may still assert any valid contract defense in arguing against [its] liability."  *Id.*

Here, defendant contends that the terms of its policy were not met, and thus a contractual obligation to pay never arose.  The Massachusetts Bay policy provided both personal-liability and no-fault coverage.  Defendant contends that "the only relevant issue" is "[w]hether *no-fault requirements* had been met for the A.D. claim."  (Def. Opp. at 18) (emphasis in original).  And it does appear that plaintiff has primarily focused its attention on the no-fault coverage provided by the policy.  In its reply, plaintiff failed to directly contest defendant's assertion that no-fault coverage was the only relevant issue.  And even more tellingly, in its damages argument, plaintiff uses the $1,000 policy limit applicable to the no-fault coverage as the basis for its damages calculation—it does not make any reference to the policy's coverage for personal liability.  Nevertheless, the complaint does allege a responsibility to pay pursuant to the policy's liability coverage, and that coverage was at least implicitly invoked in plaintiff's summary judgment briefing in the context of its arguments concerning Massachusetts Bay's internal coverage determinations.  Thus, the Court will address Massachusetts Bay's responsibility to pay under both forms of coverage.

As to the no-fault coverage, it is undisputed that the terms of the policy were not met.  To trigger no-fault coverage, "the injured person or someone acting for the injured person" is required to provide Massachusetts Bay with "written proof of claim, under oath if required, as

soon as is practicable; and execute authorization to allow [Massachusetts Bay] to obtain copies of pertinent medical reports and records."  (PSMF Ex. 31 at H-0000002430).  Both parties agree that after being notified of the availability of no-fault coverage, "neither A.D. nor anyone ac[t]ing on her [behalf] submitted any proof of loss or otherwise pursue[d] a no-fault claim." (DSMF ¶ 9; Pl. Resp. to DSMF ¶ 9).  When a policy requires written proof of claim to be submitted, and that requirement is not met, coverage does not exist.  *Cf. Steelcraft, Inc. v. Bankers & Shippers Ins. Co.*, 979 F. Supp. 60, 63 (D. Mass. 1997) ("[Plaintiff] did not file its proof of loss until well after the 60-day limit and did not obtain a waiver of that requirement . . . . It is, therefore, barred from bringing this action.").

    In response, plaintiff contends that Massachusetts Bay should be estopped from relying on A.D.'s failure to pursue a no-fault claim.  According to plaintiff, Massachusetts Bay was required under 42 C.F.R. § 411.25(a) to notify BCBSMA of the potential for coverage, at which point BCBSMA could have exercised its right to subrogation and pursued the claim in A.D.'s place.  However, Section 411.25 states that "if it is demonstrated to a primary payer that CMS has made a Medicare primary payment for services for which the primary payer *has made or should have made* primary payment, it must provide notice . . . ." 42 C.F.R. § 411.25(a).  Here, Massachusetts Bay did not make payment and had no obligation to make payment under the no-fault provision of its policy.  Thus, under Section 411.25, Massachusetts Bay was not required to report to BCBSMA the *possibility* of no-fault coverage for A.D.'s injuries.

    That leaves the question of whether Massachusetts Bay had a responsibility to pay under the personal-liability portion of the policy.  Plaintiff contends that Massachusetts Bay's preliminary internal determination that coverage would be available suffices to demonstrate its

responsibility to pay.  In support, plaintiff points to CMS's response to a public comment in a final rulemaking, which states:

> A contract can establish that a primary plan is obligated to make primary payment for designated covered items and services under the plan.  A primary payer has the obligation upon learning that Medicare has paid for certain items and services provided to an individual for which it has primary payment responsibility to determine if it is the proper primary payer for those items and services.  This determination constitutes a demonstration of primary payment responsibility for those items and services and the consequential obligation to repay Medicare.

Medicare Secondary Payer (MSP) Amendments, 73 Fed. Reg. 9679-01, 9683 (Feb. 22, 2008).
The first sentence of that response is uncontroversial—as noted, a contractual obligation may demonstrate a responsibility to pay.  However, the following two sentences are essentially circular, stating that "a primary payer has the obligation . . . to determine if it is the *proper* primary payer" where the primary payer "*has primary payment responsibility*," and that such a determination "constitutes a demonstration of primary payment responsibility."  *Id.* (emphasis added).  Thus, according to CMS's response, primary payment responsibility is a prerequisite to this form of demonstrating primary payment responsibility.

While the import of that guidance from CMS is unclear, it cannot be the case that an internal determination that coverage *may* be available amounts to a demonstration of responsibility to pay for the purposes of the MSP Act.  At most, such an internal determination holds essentially the same significance as a report to CMS under Section 111.  "Anytime an insurance company becomes aware that a Medicare beneficiary was injured in an accident for which it . . . wrote a policy that may provide coverage, the insurance company is obligated to report it to CMS."  *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091, at *6 (S.D.N.Y. Mar. 26, 2021).  However, "CMS reporting does not constitute an admission by the reporting entity that it is the primary plan in connection with the reported event;

instead, such reporting simply confirms that the reporting entity or a direct subsidiary of the reporting entity *may* provide coverage for the accident." *Id.* (emphasis in original). Here, the internal determinations that plaintiff relies upon show fundamentally the same thing—confirmation that coverage *may* exist should the claims process be completed.

On the basis of the information provided in A.D.'s initial notice of claim, Massachusetts Bay made the preliminary determinations (1) that its insured was 50% responsible for A.D.'s injuries; (2) that there were "no coverage issues"; and (3) that "[c]overage [was] confirmed under policy HVN A038731." (PSMF Ex. 33 at 2-3). Those determinations were made in the context of an initial screening and for the purposes of "setting the proper reserve" of funds should an obligation to pay be established following investigation. (Greenfield 30(b)(6) Dep. at 224-25). A determination that the insured did, in fact, have liability coverage certainly does not, by itself, establish a contractual duty to pay an injured party.

Plaintiff also points to a portion of the Massachusetts Bay investigation notes that states "[M]edicare will have a lien." (DSMF Ex. 2 at H00000002472). However, that statement is embedded in a note that reads as follows: "[R]eviewed claim with [insured], explained process. . . . I explained to her that [M]edicare will have a lien and we need to see what all the bills/[treatments] [are] and then evaluate to resolve once [A.D.] finished her [treatments]. [S]he understood. I sent [MSP] consent to release form and med auth." (*Id.*). In that context, it is clear that the claims adjuster was simply recognizing that Medicare would have a lien should the claims process be completed and payments be made. The substance of that determination is similar to what is communicated in a Section 111 report to CMS and does not establish a contractual duty to pay.

Furthermore, there is no evidence that the MSP consent-to-release form or medical authorization sent by the claims adjuster were ever returned to Massachusetts Bay.  And plaintiff does not substantially contest that "A.D. did not submit any medical bills or other information to Massachusetts Bay" following her initial notice of claim.  (Greenfield Aff. ¶ 3).[5]  The policy's personal-liability coverage includes the right of Massachusetts Bay to "investigate and settle any claim . . . that [it] decide[s] is appropriate," and requires that, "at [Massachusetts Bay's] request," insureds are to "help [Massachusetts Bay] . . . [t]o secure and give evidence."  (PSUMF Ex. 31 at H-0000002418, H-0000002422).  The failure to provide any medical bills or other information following the initial notice of claim operates to frustrate Massachusetts Bay's rights under the contract.  Perhaps more importantly, however, plaintiff must show that a contractual obligation to pay arose as to the specific items and services that were paid for by BCBSMA.  *See Zinman v. Shalala*, 67 F.3d 841, 844 (9th Cir. 1995) ("It is clear from the statute that the references to 'item or service' are intended to define the payments for which Medicare has a right to reimbursement.").  Without the submission of medical bills from A.D., Massachusetts Bay did not have an opportunity to make any assessment as to whether coverage would apply to any particular items or services.  And when, in the midst of investigation, A.D. chose to withdraw her personal-liability claim, any contractual obligation to pay was terminated from that point forward.  Thus, even if a contractual obligation to pay may have arisen in a general sense prior to A.D.'s withdrawal, plaintiff has not shown that a contractual duty to pay for the specific items paid for by BCBSMA ever arose.

---

[5] Plaintiff "disputed" that fact in its response to defendants' statement of material facts under Local Rule 56.1.  However, its response did not actually contradict the assertion.  Instead, it simply pointed to evidence that Massachusetts Bay had received *some* information from A.D. in her initial notice of claim—there is no evidence that A.D. or the insured submitted actual medical bills or other documentation to Massachusetts Bay following A.D.'s initial notice of claim.  (*See* Pl. Resp. to DSMF ¶ 6).

In sum, because Massachusetts Bay was not subject to any judgment, did not make any payment, and did not come to any settlement concerning A.D.'s medical costs, plaintiff must rely on a contractual obligation to show that Massachusetts Bay had a responsibility to make payment. However, A.D. failed to satisfy the requirements necessary to trigger no-fault coverage under the policy, and Massachusetts Bay's internal determination that personal-liability coverage was available did not rise to the level of establishing a contractual duty to pay for the items or services that were covered by BCBSMA. Therefore, no contractual obligation arose under the policy that might amount to a demonstration of responsibility to pay. And because Massachusetts Bay was not required to contact BCBSMA directly to notify it about the potential of coverage, it is not estopped from relying on A.D.'s failure to complete the claims process to establish that it does not have a duty to reimburse under the MSP Act.

Because plaintiff has failed to establish that Massachusetts Bay had a demonstrated responsibility to pay prior to suit, its claim for reimbursement under the MSP Act fails. Accordingly, plaintiff's motion for summary judgment on Count 1 will be denied, and defendant's motion for summary judgment on Count 1 will be granted.

## 2.    Breach-of-Contract Claim Against Massachusetts Bay (Count 2)

In Count 2, plaintiff seeks to invoke its right to subrogation under the MSP Act in order to assert a claim for breach of contract against Massachusetts Bay. It points to 42 C.F.R. § 411.26, which provides that "[w]ith respect to services for which Medicare paid, CMS is subrogated to any individual, provider, supplier, physician, private insurer, State agency, attorney, or any other entity entitled to payment by a primary payer." 42 C.F.R § 411.26. That regulation is based on 42 U.S.C. § 1395y(b)(2)(B)(iv), which states that "[t]he United States shall be subrogated (to the extent of payment made under this subchapter for such an item or

service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iv).

Neither the regulation, nor the statute upon which it is based, mention MAOs. However, 42 C.F.R. § 422.108(f) provides, in relevant part, that "[t]he [MAO] will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter." 42 C.F.R. § 422.108(f). Subparts B through D include Section 411.26, the right that CMS has to be subrogated by a primary payer. *See* 42 C.F.R § 411.26. Thus, it appears that BCBSMA—and by assignment, plaintiff—does have certain subrogation rights. *See MAO-MSO Recovery II, LLC, Series PMPI, et al. v. GEICO, et al.*, 2024 WL 2924063 at *11 (D. Md. June 10, 2024) ("Based on the language of [42 C.F.R. § 422.108(f)], the rights that an MAO may exercise to recover from a primary plan include CMS's subrogation right contained in 42 C.F.R. § 411.26.").[6]

Nevertheless, because no contractual obligation to pay ever arose under the Massachusetts Bay policy, there cannot have been a breach of contract. As plaintiff itself appears to acknowledge, the claims process had not been completed. (Pl. Mot. at 18) ("If Massachusetts Bay had properly notified Blue Cross MA or primary coverage, then Blue Cross MA could have *completed the claims process* by exercising its [subrogation rights]." (emphasis

---

[6] Plaintiff does not specify to whom it seeks to subrogate itself. However, the text of the regulation and statute indicates that it must be a person or entity "entitled to payment by a primary payer." 42 C.F.R § 411.26; *see* 42 U.S.C. § 1395y(b)(2)(B)(iv) ("The United States shall be subrogated . . . to any right under this subsection . . . *to payment* . . . under a primary plan.") (emphasis added)). Here, the only party that was ostensibly entitled to payment under the Massachusetts Bay policy is A.D. While not a direct party to the insurance contract, A.D. would have been an intended third-party beneficiary of the policy and thus would have the right to sue to enforce the contract. *See Bos. Exec. Helicopters, LLC v. Maguire*, 196 F. Supp. 3d 134, 142 (D. Mass. 2016) ("Under Massachusetts law, only intended beneficiaries . . . have standing to enforce a contract to which they are not a party."); *Massachusetts v. Mylan Lab'ys*, 357 F. Supp. 2d 314, 326 (D. Mass. 2005) ("The intended party need not be specifically or individually identified in the contract, but must fall within a class clearly intended by the parties to benefit from the contract.").

17

added)).  Where the claims process was not completed, there was no duty to pay.[7]  Thus, there

was no contractual duty to A.D. that Massachusetts Bay could plausibly have breached, and no

underlying breach-of-contract claim that plaintiff might now assert in A.D.'s place.  Therefore,

summary judgment will be granted in favor of defendant as to Count 2.

### 3.    MSP-Act Claim Against Citizens (Count 3)

Count 3 is a claim against Citizens for reimbursement under the MSP Act.  None of the

facts underlying the liability of Citizens for reimbursement are disputed.  It is "undisputed that

Citizens settled P.R.'s liability claim."  (Def. Resp. to Pl. SMF ¶ 31).  That settlement covered

the costs of treatments that had been paid for by P.R.'s MAO, BCBSMA.[8]  Citizens was aware,

or at least certainly should have been aware, that BCBSMA had made those payments prior to its

settlement with P.R.[9]  And it is undisputed that Citizens has not reimbursed BCBSMA or

plaintiff to date.

Citizens does not contest that the basic elements for reimbursement liability under the

MSP Act have been established as to the P.R. claim.  Instead, it asserts that it cannot be held

liable because, in making its settlement with P.R., it exhausted its policy limits and cannot be

held responsible to pay any more.  However, that argument misses the mark.

---

[7] Furthermore, even if a general obligation to cover A.D.'s medical expenses had arisen at some point, she withdrew her claim within a month of filing it.  Certainly, Massachusetts Bay was not obligated to make payment within that one-month period, especially in the absence of additional documentation beyond the initial notice.

[8] *See* Greenfield 30(b)(6) Dep. at 147-48 ("Q:  And the settlement release in this case, did it include a release for P.R's medical expenses?  A:  It was all claimed, so I would have to say yes.  Q:  So that would include . . . his economic damages for medical expenses, correct?  Q:  Yes.").

[9] *See* Def. Resp. to Req. for Admission at No. 7 ("Citizens admits only that it was aware before P.R. signed the release of his claim that BCBSMA had asserted that it had issued a Medicare Advantage Plan to P.R."); Greenfield 30(b)(6) Dep. at 170, 174 ("Q:  [B]y November of 2017, and then subsequently in 2018, based on the notice of lien from Blue Cross/Blue Shield and the consolidated statement of benefits, Hanover and Citizens was aware of the basis for the lien and the amount of the lien that was being asserted by [BCBSMA], correct?  A: Yes. . . .  Q:  Hanover and Citizens was on notice that, in fact, the Blue Cross/Blue Shield policy in Massachusetts provided Medicare Advantage Plan benefits to P.R., correct?  A:  It would appear so."); ECF No. 102-2, June 20, 2019 Email from Benjamin Christiano ("[T]here is a BCBS lien on file.").

This is not a contract action.  It is a suit for reimbursement under the MSP Act.  Plaintiff is not a beneficiary making a claim for compensation under the Citizens policy; instead, it is essentially standing in the shoes of a government agency enforcing an obligation to pay that arises from statute and regulation.  A policy limit only sets the boundaries of the contractual relationship between the insurer, its policyholder, and its beneficiaries—it limits the amount that the insurer can be held responsible for paying a *beneficiary*.  In doing so, it indirectly limits the amount that the insurer may be obligated to reimburse an MAO under the MSP, but if that obligation has arisen, the fact that an insurer has exhausted its contractual obligation to a beneficiary has no bearing on whether it has satisfied its statutory obligation to a secondary payer under the MSP.

It may be true that when an insurer exhausts its policy limits *prior* to Medicare making any payments, no reimbursement obligation would arise, because the insurer would have no responsibility to pay by the time Medicare stepped in.  That is consistent with the purpose of the statute.  In that scenario, Medicare benefits serve as "an entitlement of last resort," available only once the private insurer is no longer liable.  *Western Heritage Ins. Co.*, 832 F.3d at 1234.  In the present situation, however, Citizens made its payment to P.R. *after* BCBSMA had already made conditional payments for P.R.'s medical care.  That is a scenario that the MSP Act seeks to avoid, and that the reimbursement obligation is meant to remedy.  Had Citizens reimbursed BCBSMA for its payments prior to or at the time of its settlement with P.R., it could have adjusted its settlement amount accordingly, and thereby both kept its overall outlay within its policy limit and complied with the MSP Act.  However, it failed to do so, and its payment to P.R. is no defense to its MSP Act liability.  *See* 42 C.F.R. § 411.24(h), (i)(1) ("If the beneficiary . . . receives a primary payment, the beneficiary . . . must reimburse Medicare within 60 days. . . .  If

Medicare is not reimbursed as required . . . , the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary . . . .").

Contrary to defendants' contention, that is not an instance of CMS "overrid[ing] state insurance law." (Def. Reply at 8). The underlying contractual obligations between Citizens, its policyholders, and its beneficiaries—including the policy limits—remain entirely untouched by the regulatory scheme. Citizens is only required to cover $100,000 of its policyholder's liability. If BCBSMA had made $125,000 in payments for P.R.'s medical care arising from the accident, Citizens would only be required to reimburse $100,000 of those payments and would have no further obligation to P.R. Defendant's contention that such a reading of the statutory and regulatory scheme would render "insurers responsible to CMS for unlimited sums" is specious. (Def. Opp. at 6-7). Insurers' reimbursement-liability exposure under the MSP Act is capped at double the policy limit.

In sum, the undisputed facts establish "(1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) the damages amount." *W. Heritage Ins. Co.*, 832 at 1239 (11th Cir. 2016). And, under those factual circumstances, exhaustion of policy limits is not a defense. Thus, Citizens is obligated to reimburse plaintiff under the MSP Act, defendants' motion for summary judgment as to Count 3 will be denied, and plaintiff's motion for summary judgment as to Count 3 will be granted.

### a.    Damages

It is undisputed that BCBSMA was billed a total of $45,916.13 for medical services provided to P.R. as a result of the accident, and that BCBSMA made a total of $11,450.98 in conditional payments for those services. (Def. Resp. to Pl. SMF ¶¶ 24-30). Plaintiff contends that damages should be measured by what BCBSMA was billed, or at least by what Citizens

20

would have paid for those services.  Defendant contends, and the Court agrees, that damages should be measured by what BCBSMA actually paid.

There is no statutory or regulatory language suggesting that primary payers are obligated to pay Medicare the amount that the primary payer would have paid or the amount that an MAO was billed, rather than the amount the MAO actually paid.  Instead, a plain reading of the statutory and regulatory language indicates that a primary payer is obligated to reimburse the conditional *payments* made by Medicare or an MAO.

Count 3 is brought under 42 U.S.C. § 1395y(b)(3)(A), which establishes "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) . . . ."  42 U.S.C. § 1395y(b)(3)(A).  There is no definition of "reimbursement" in the statute, and "[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning."  *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006).  As noted in *In re Nichols*, "[t]he use of the term 'reimbursement' . . . necessarily implies that a previous *payment* was made for which the claimant seeks to be repaid."  2010 WL 6259965, at *4 n.8 (B.A.P. 9th Cir. Mar. 17, 2010) (emphasis added).  In *United States v. Serafini*, the Third Circuit approved of the district court's assessment that "[a]s it is used in its common parlance, reimbursement means the delivery of money to a person to pay back that person for money that the person expended for some matter."  233 F.3d 758, 767 n.11 (3d Cir. 2000).  Under no ordinary understanding of the term "reimbursement" would a party be obligated to pay back a sum that was billed but never actually paid.

Plaintiff's alternative theory—that the amount of reimbursement should be the amount Citizens would have paid for the treatment under its own policy, as opposed to the amount

actually paid by BCBSMA—likewise does not comport with the ordinary understanding of the term "reimbursement."  And absent any statutory or regulatory language supporting plaintiff's theory, the Court sees no basis for diverging from the ordinary meaning of "reimbursement."[10] The injury suffered by BCBSMA was the amount of money that it spent on treatments that Citizens was supposed to cover—in other words, the *amount it paid*.  Even if Citizens would have paid more for the same treatments, the cost imposed upon BCBSMA was still the amount that *BCBSMA* was made to pay for those treatments.  Thus, it is reimbursement of that amount that would make the injured party whole.

It is true that the remedial scheme also serves a deterrent purpose, and plaintiff contends that measuring damages by the amount the insurer would have paid is necessary to that end. However, the statute and regulations provide for deterrence in the form of mandatory double damages.  42 U.S.C. § 1395y(b)(3)(A) (providing for "[d]amages (which *shall* be in an amount double the amount otherwise provided)" (emphasis added)).  Where Congress expressly provided for a deterrence mechanism in its remedial scheme, it is not the proper role of the Court to create another.[11]

Accordingly, damages will be measured by the amount that BCBSMA paid for P.R.'s medical care ($11,450.98).  Prejudgment interest will be applied to that amount beginning 60

---

[10] In *Nat'l Coal Ass'n v. Chater*, the court held that "[t]he ordinary meaning of the term 'reimbursement' is not restricted by any requirement that such payments be dollar-for-dollar what the reimbursed party paid out."  81 F.3d 1077, 1082 (11th Cir. 1996).  However, that was in a context where two forms of repayment had been explicitly contemplated under the regulatory scheme:  cost-basis and risk-capitation.  Furthermore, the court based that holding on the definition of "reimburse" as "to pay back (an equivalent for something taken, lost, or expended) to someone:  repay."  *Id.* (citing *Webster's Third New International Dictionary* 1914 (1986)).  The most straightforward understanding of repaying "an equivalent" is dollar-for-dollar repayment of what the reimbursed party paid out.  And even if the definition is ambiguous, there is no agency interpretation of the term suggesting that reimbursement in this context means anything other than dollar-for-dollar repayment.  Thus, the most straightforward definition of the term consistent with the statutory and regulatory scheme is the one that should apply—that is, "reimbursement" means repayment of the dollar amount paid out by an MAO.

[11] In any event, plaintiff has not set forth evidence of how much Citizens would have paid for P.R.'s medical treatments under its policy.

days after the settlement pursuant to 42. C.F.R. §§ 411.24(m) and 405.378(d)(1)(i), and the resulting amount will be doubled as required by statute.

### III.    Motion for Leave to File Third-Party Complaint

Citizens has moved for leave to file a third-party complaint seeking indemnification from P.R. pursuant to its settlement agreement. Given the late stage of the litigation—the claims currently before the Court will be resolved upon issuance of this order—and the minimal resulting prejudice that Citizens might suffer in being required to pursue indemnification in a separate action, the motion will be denied.

#### A.    Legal Standard

Fed. R. Civ. P. 14(a)(1) provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." The nonparty who is so served becomes the "third-party defendant." Fed. R. Civ. P. 14(a)(2).

The defendant may file such a complaint as a matter of right within ten days after serving the original answer. *Id.* Beyond that point, however, the defendant must obtain leave of court. *Id.* Whether to grant that leave is a decision "left to the informed discretion of the district court, which should allow impleader on any colorable claim of derivative liability that will not unduly delay or otherwise prejudice the ongoing proceedings." *Lehman v. Revolution Portfolio, L.L.C.*, 166 F.3d 389, 393 (1st Cir. 1999). Factors to be considered in exercising that discretion include "(1) potential prejudice to plaintiff[] . . . ; (2) whether the impleader will add new and complicated issues that will threaten the orderly and prompt resolution of the case and delay the trial; (3) whether defendants unreasonably delayed in filing the third party complaint; and (4) whether the third party complaint is so insubstantial that it fails to state a claim." *Disability Rts.*

*Council of Greater Washington v. Washington Metro. Area Transit Auth.*, 2006 WL 1102767, at *1 (D.D.C. Apr. 26, 2006).

### B.    <u>Analysis</u>

Discovery has been completed, summary judgment briefing has been completed, and the Court is ruling on the summary judgment motions in this order.  At this stage of the proceedings, allowing a third-party complaint seeking indemnification to be filed would serve only to complicate and delay the final resolution of the claims currently before the Court.  Furthermore, the presence of a separate contractual obligation to indemnify does not have any bearing on the statutory liability of Citizens.  That liability having been established, all that remains for Citizens and P.R. to possibly litigate is a straightforward contract dispute under state law.  As that contract issue has not been directly litigated to any extent thus far in this case, it is unclear how litigating the claim in a separate action in state court could be substantially more burdensome than bringing the claim now in this Court.

Furthermore, granting leave to file the third-party complaint for indemnification would require the Court to exercise supplemental jurisdiction over a state-law claim.  While judgment has not yet been entered, the federal claims in this case have now been resolved.  It would be contrary to the interests of comity for this Court to exercise jurisdiction over a state-law claim when the related federal claims that would allow for jurisdiction are no longer being litigated.

Accordingly, Citizens' motion for leave to file a third-party complaint against P.R. will be denied.

IV.    **Conclusion**

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED as to

Count 1 and GRANTED as to Count 3; defendants' motion for summary judgment is

GRANTED as to Counts 1 and 2, and DENIED as to Count 3; and defendant Citizens Insurance

Company of America's motion for leave to file a third-party complaint is DENIED.  Damages

are hereby awarded to plaintiff on Count 3 in the amount of **$38,846.90**.[12]

**So Ordered.**

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  August 14, 2025                          United States District Judge

---

[12] The underlying damages amount is the $11,450.98 in conditional payments made by BCBSMA for P.R.'s medical care.  Interest began accruing on that amount on August 20, 2019 (60 days after Citizens settled with P.R.).  *See* 42 C.F.R. § 411.24(m)(1)-(2)(i).  The applicable annual interest rate is 11.625%, to be applied on a simple basis.  *See* 42 C.F.R. §§ 411.24(2)(iii), 405.378(d); 45 C.F.R § 30.13(a); U.S. Dep't Health & Hum. Servs., 4150-04 Notice of Interest Rate on Overdue Debts (updated July 10, 2025), https://www.hhs.gov/about/agencies/asfr/finance/financial-policy-library/interest-rates/index.html.  Thus, the interest calculation is as follows: 11.625% * (2186 days / 365) = 69.62%.  That figure is then applied to the underlying damages amount as follows:  $11,450.98 * (1 + 0.6962) = $19,423.45.  That amount is then statutorily doubled, resulting in a total damages figure of $38,846.90.